Dennis BAUER, Appellant,

v.

POTTSVILLE AREA EMERGENCY MEDICAL SERVICES, INC., a/k/a Lions Ambulance Service, Appellee.

Superior Court of Pennsylvania.

Argued June 21, 2000.
Filed Aug. 25, 2000.

Stanley J. Brassington, Schuylkill Haven, for appellant.

Paul J. Dellasega, Harrisburg, for appellee.

Before: CAVANAUGH, DEL SOLE and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Appellant, Dennis Bauer, appeals the August 2, 1999 Order sustaining the preliminary objections in the nature of a demurrer of appellee, Pottsville Area Emergency Medical Services Inc., A/K/A Lions Ambulance Service, and dismissing his complaint with prejudice. On appeal, appellant argues appellee breached the terms of the employee handbook, which were enforceable as provisions of an implied contract. Furthermore, appellant contends appellee violated the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201–219, by constructively terminating his employment.

¶ 2 Appellee employed appellant as an emergency medical technician in April 1997 and, thereafter, provided a handbook to its employees, which indicated an employee working at least 36 hours per week for 90 days would be treated as a full-time employee. Appellant worked 36 hours per week for over 90 days and believed he had a right to receive full-time wages, health insurance and other benefits pursuant to the employee handbook. After more than 200 days of working 36 hours per week, appellant informally complained to appellee that he was not receiving full time benefits. On November 23, 1998, appellant instituted a breach of contract action and an action under the FLSA, to which appellee filed preliminary objections raising the legal insufficiency of appellant's pleading. By court Order dated April 8, 1999, appellee's preliminary objections were sustained; however, appellant was given leave to file an amended complaint. On April 28, 1999, appellant filed his amended complaint wherein he alleged the following:

26. Both [appellant] and [appellee] are under an obligation to abide by the terms and conditions set forth in [appellee's] Employee Handbook which both parties agreed to voluntarily be bound by, and which was in full force and effect when [appellant] demanded full time employment and status with [appellee]. . . .

27. The Employee Handbook creates an express written and implied contract between [appellant] and [appellee].

28. [Appellee] owed a duty to [appellant] to fairly and equitably abide and comply with all of the terms and conditions set forth in their agreement/contract.

29. [Appellee] breached the terms of said agreement/contract by failing to promote [appellant] to the status of full-time employee since he has been scheduled for, and has

worked, at least 36 hours per week for a period of 90 consecutive days.

\* \* \*

44. [Appellee] is in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C.S. Section 215, *et seq.*

45. [Appellee] is in violation of the anti-retaliatory provisions of said Act by discriminating against/constructively discharging [appellant], and reducing [appellant's] hours to zero shortly after [appellant] voiced informal/unofficial complaints regarding his employment status at [appellee], and telling [appellee] that it was unlawful for [appellee] to not bestow upon [appellant] the right's and benefits that would accrue to a full-time employee in accordance with the terms of the handbook. [Appellant] also told [appellee] that he was going to see an attorney to discuss the fact that [appellee] was not "promoting" [appellant] to full-time status in spite of the fact that [appellant] had qualified for such in accordance with the terms of the handbook.

46. [Appellee] had threatened [appellant] and told him not to speak to an attorney or to consult with anyone regarding clarification of his legal rights, and further intimidated and threatened [appellant] with legal action against him if he sought counsel of an attorney.

(Appellant's Amended Complaint at 5, 8–9.) On June 3, 1999, appellee responded to these paragraphs by filing preliminary objections in the nature of a demurrer asserting: 1) the employee handbook contains a provision evidencing its intent to create an at-will employment relationship; 2) appellant has never filed a formal complaint pursuant to the FLSA; and 3) appellant does not assert a violation of rights protected by the FLSA (Appellee's Preliminary Objections at 2–3.) The trial court agreed and, by Order dated August 22, 1999, dismissed appellant's complaint. This timely appeal followed.

¶ 3 On appeal, appellant presents the following issues for our review:

I. Whether the lower court did in fact commit an abuse of discretion and an error of law in holding that [appellant] and [appellee] had "no contract upon which to base a cause of action."

II. Whether the lower court did in fact commit an abuse of discretion and an error of law in holding that [appellant's] unofficial complaints and assertion of rights need to be "specified", and in holding that "[appellant] has failed to specify what rights under or related to the FLSA he was asserting that led to [appellee's] alleged retaliation."

(Appellant's brief, at 2.)

⬛⬛⬛ ¶ 4 Our standard of review is well settled:

Where a preliminary objection in the nature of a demurrer is sustained, an appellate court's review is limited. All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Moser v. Heistand*, 545 Pa. 554, 559, 681 A.2d 1322, 1325 (1996) (citation omitted).

⬛⬛⬛ ¶ 5 Appellant argues he relied on the terms and provisions of the employee handbook as creating a duty on appellee's part to provide him with full-time benefits once he worked 36 hours per week for 90 days. Appellee argues its employee handbook specifically states that it is an "employer at will" and that it reserves the right to terminate employment at any time. Appellee claims, therefore, the employee handbook does not create a binding contract with appellant.

A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook. The handbook must contain a clear indication that the employer intended to overcome the at-will presumption. We have held that it is for the court to interpret the handbook to discern whether it contains evidence of the employer's intention to be bound legally.

*Luteran v. Loral Fairchild Corp.*, 455 Pa.Super. 364, 369–73, 688 A.2d 211, 214–15 (1997) (citation omitted). *See also Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 212–14, 511 A.2d 830, 837 ("Before we can decide whether there is a valid offer and acceptance with the distribution of a handbook, a threshold question must be asked: With the distribution of the handbook, does the at-will employee reasonably understand that the employer intended to alter the pre-existing at-will status?").

Provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties. A unilateral contract is a contract wherein one party makes a promissory offer which calls for the other party to accept by rendering a performance. In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms. The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required.

*Darlington v. General Electric*, 350 Pa.Super. 183, 210–12, 504 A.2d 306, 320 (1986) (Beck, J., concurring).

¶ 6 In this case, the employee handbook stated, in relevant part:

EMPLOYMENT

Pottsville Area E.M.S., (herein referred to as PAEMS), is an "at will" employer. This means that employment may be offered or denied at any time for any reason. Both PAEMS management and the employee reserve the right to terminate employment at any time for any reason.

\* \* \*

STATUS CLASSIFICATIONS

Full Time-Any employee scheduled for at least 36 hours per week for a period of 90 consecutive days will be treated as a full time employee.

(Employee Handbook, effective May 1, 1998, at 1.) In addition, the handbook set forth appellee's policy regarding attendance, vacation, paid sick time and other benefits. Specifically, full-time employees are given forty (40) hours of sick time per year, eight (8) hours of compensated time off for holidays, up to twenty-four (24) hours of bereavement leave, health coverage, and compensation for military service and jury duty. The handbook does not provide for part time and per diem employee benefits.

¶ 7 In its Opinion, the trial court found there was no contract upon which to base a cause of action because appellee evidenced its intent to maintain the at-will employment relationship. We disagree. In this case, a reasonable person in appellant's position would understand that his continued performance would bear the fruits of his employer's policies. Appellant worked the requisite 36 hours per week for in excess of 90 days and received none of the benefits provided for in the handbook.

¶ 8 An aspect of this case which is unlikely to be found in other cases involving quasi contractual relationships arising from employee handbooks has to do with public policy. Emergency medical services involve critical day-to-day 24–hour responses to emergency medical needs of the population. In some cases, the service is fully funded by the municipality involved

or is partly financed by state and federal grant programs and/or public solicitations. There are wide varieties of services and wide discretion as to implementation. Some are adjuncts to police departments, fire departments and even spin-offs from funeral directors because of the access to ambulance type vehicles. In all cases, they attempt to fill an important community need within the available resources. To the extent the service provided is not fully funded by government or is created as a specific arm of a mandated public service, subject to contract or even union-negotiated agreements, there exists wide flexibility in the operative arrangement of the employment relationship. The nebulous and temporary character of the employment is illustrated by the provision in question here.

¶ 9 In the handbook presented to appellant/employee, while elements of a contract can be derived on a quantum meruit basis in accordance with unilateral terms contained in the handbook, no absolute, binding and conclusive arrangement flows from implementation of the terms. It is only at the election of the employer that full employment status and benefits are derived from the terms in the handbook. The flexibility provided by those provisions may be necessitated as emergency calls cannot be completely regulated or predicted on an hourly or days-worked basis. There can and will be fluctuations in the call upon such services. Similarly, fill-in during vacation time or illness of other employees may require exceeding the part-time cap and engender temporary treatment as a full-time employee. This may be the only means by which the Pottsville area can meet a public responsibility with limited tax resources.

■ ¶ 10 Pottsville Area Emergency Medical Services utilized part-time employees to the extent possible and, under conditions described in the handbook, permitted a person who worked at least 36 hours per week for a period of 90 consecutive days to be *"treated as a full-time employee."* The operative word in this provision is *treated.* If there was specific intent to establish a definitive contractual relationship, a term such as "becomes," "creates" or "constitutes" would have been employed. The term "treated as" implies that during the period the stated conditions were met, the entitlements applicable to a full-time employee would inure to the employee's benefit. Nothing in the handbook permits the assumption put forth by appellant that a contract of *permanent* or *full-time* employment was created when the minimum hours-days criteria of full employment were met. Neither does the provision permit appellant to presume that once the threshold was met and passed, there could be no reduction in hours, lessening or elimination of full-time status or ultimately termination at will. Based upon the facts averred in his complaint, however, appellant may be entitled to the benefits applicable to a full-time employee for the period during which he fulfilled the terms of the employee handbook. Accordingly, the trial court abused its discretion when it concluded the facts, as set forth by appellant in his complaint, are insufficient to support a claim of breach of contract.[1]

¶ 11 Appellant also argues appellee violated the FLSA when it reduced his working hours to zero in retaliation for his complaints regarding full-time benefits. Specifically, appellant alleges appellee violated section 215, Prohibited acts; Prima facie evidence, (a)(3), which prohibits the

---

1. The concurring and dissenting statement by Judge Cavanaugh finds fault with the interpretation of the employee handbook as creating a basis for appellant's breach of contract action. Judge Cavanaugh finds the handbook is nothing more than a unilateral promise by appellee. As stated above, however, we find appellant can recover under the doctrine of quantum meruit based upon the facts averred

in his complaint. In addition, to the extent Judge Cavanaugh finds appellant should seek recovery under the Wage Payment and Collection Law (WPCL), 43 P.S. §§ 260.1–260.12, we note the WPCL is not the exclusive remedy for an individual seeking to recover wages and other benefits from an employer. *Todora v. Jones & Laughlin Steel Corp.,* 304 Pa.Super. 213, 450 A.2d 647 (1982).

discharge of or discrimination in any other manner against an employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Fair Labor Standards Act], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C.A. § 215(a)(3).

¶ 12 The anti-retaliation provision of the FLSA protects only those employees who are asserting their statutory rights. *James v. MedicalControl, Inc.*, 29 F.Supp.2d 749 (N.D.Tex.1998). *See also Bonham v. Copper Cellar Corp.*, 476 F.Supp. 98 (E.D.Tenn.1979) (where the immediate motivating factor for an employee's discharge is the employee's assertion of statutory rights under the FLSA, either officially or in complaints at work, the discharge is discriminatory whether other grounds for discharge exist). To establish a prima facie case of retaliation for the exercise of a federally protected right, appellant must show that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action following his protected activity; and (3) there was a causal connection between the activity and the adverse action. *James*, 29 F.Supp.2d at 752.

¶ 13 In interpreting section 215(a)(3), the federal courts in Pennsylvania have focused on the circumstances surrounding the employee's discharge and the timing of the FLSA action. In *Brock v. Richardson*, 812 F.2d 121 (3d Cir.Pa.1987), an employee complaint was filed with the Department of Labor, Wage and Hour Division, regarding employer overtime violations. A compliance officer with the Division contacted an employee, who did not file the complaint, and interviewed him about his employer's overtime violations. The compliance officer then spoke with the employer about the claims and, based upon the mistaken belief that his employee filed the complaint, the employer fired him. When his employee filed an FLSA action, the employer claimed the employee, in fact,

did not file the complaint with the Division and, thus, there can be no violation of the FLSA. The court found, however, the discharge of an employee under the mistaken impression that he participated in protected activity is enough to violate the FLSA.

¶ 14 In *Best v. Janerich*, 80 F.Supp.2d 334 (M.D.Pa.1999), *aff'd*, 208 F.3d 205 (3d Cir.Pa.2000), the employee filed a complaint with the Pennsylvania Human Relations Commission and instituted an FLSA action after she was terminated by her employer. The court found that the employee was discharged before her employer became aware of her claims of discrimination and, thus, she had no viable claim for retaliation under the FLSA. Similarly, the court in *Sandt v. Holden*, 698 F.Supp. 64 (M.D.Pa.1988), found the employee was not discharged in violation of the FLSA because her termination occurred well before the filing of an FLSA action. The employee, who performed domestic and nursing services for a 99 year-old woman, sent a letter regarding overtime pay to her employer's attorney. The employee was discharged and, thereafter, filed an FLSA action. The court concluded the employee "failed to demonstrate that the immediate motivating factor for her discharge was her assertion of her rights under the FLSA." *Id.* at 69.

¶ 15 In *Nairne v. Manzo*, 1987 WL 9145, 1987 U.S. Dist. LEXIS 2723 (E.D.Pa.1987), the employee contacted the Wage and Hour Division about overtime pay and posted the information she received in her employer's office. Her employer became hostile towards her and, thereafter, the employer terminated her employment as an ophthalmological technician. The court reviewed the circumstances occurring after the employee's posting and found she committed no act subsequent to the posting which, in itself, would warrant dismissal. The employer, therefore, violated the retaliatory provision of the FLSA.

¶ 16 In light of our federal case law, the factual averments in appellant's complaint do not raise an issue concerning

whether appellant engaged in conduct protected by the FLSA. Prior to the reduction of his work hours, appellant never complained that appellee was violating the FLSA, or instituted any type of FLSA proceeding. At most, appellant contacted appellee regarding his status as a full-time employee according to the terms of the employee handbook, which clearly does not implicate the FLSA. Appellant based his complaint upon the creation of an implied contract and, thus, failed to establish that he engaged in protected activity under the FLSA. Accordingly, the trial court did not commit an abuse of discretion by finding the factual averments, set forth in appellant's complaint, do not support a retaliatory discharge cause of action under the FLSA.

¶ 17 The Order of the trial court, insofar as it dismisses appellant's breach of contract action, is vacated and the case is remanded to the trial court for further proceedings consistent with this memorandum. In all other respects, the Order is affirmed.

¶ 18 Order affirmed in part, vacated in part, and case remanded.

¶ 19 Jurisdiction relinquished.

¶ 20 Concurring and Dissenting Opinion by CAVANAUGH, J.

CAVANAUGH, J., Concurring and Dissenting.

¶ 1 It is firmly established that Pennsylvania is an at-will employment jurisdiction. *McLaughlin v. Gastrointestinal Specialists, Inc.,* 750 A.2d 283 (Pa.2000). This doctrine is an offspring of the ancient law of master and servant. The servant is required to perform his duties at the discretion of the employer and the law will not involve itself with disputes concerning the terms and conditions of the employment relationship. The master-servant (employer-employee) relationship is, of course, a mutual bargain. The employer may at any time discharge the employee, and, contrariwise, the employee may at any time leave his employment (indentured servitude and involuntary servitude having happily passed into America's past).

¶ 2 The law has recognized in many instances the inequity of the master-servant bargain and has provided remedies to the employee who has been wrongfully terminated and even in some cases to the employee who, while retained, has been ill-treated. Examples abound and include, for example, the right to bargain collectively, Labor Management Relations Acts, Wage and Hours Acts, minimum wage laws, anti-discrimination laws, and equal employment rights laws. These rights, too numerous to catalog, include wrongful discharge lawsuits. It is the contract of employment doctrine and its adjunct, the employee handbook, which often form the basis of wrongful discharge lawsuits. However, by definition, such suits have been limited to those who suffer loss of their employment.

¶ 3 To one still in an employment relationship, the claim simply becomes one of the terms and conditions of employment which is not justicially cognizable absent a statutory or judicially created form of relief. Appellant herein has not been discharged from employment and he furnishes no precedent for the concept of constructive termination which would entitle an employee to the possible rights of one who has been terminated. To the extent, however, that one in appellant's status is entitled to claim the rights of a terminated employee, I disagree with the majority.

¶ 4 An employee may be discharged with or without cause, and our law does not prohibit firing an employee for relying on an employer's promise. *Paul v. Lankenau Hospital,* 524 Pa. 90, 93–95, 569 A.2d 346, 348 (1990). Nor does our law recognize a cause of action for reliance upon a representation in an employee handbook that is not part of a bargained for condition of employment. For this reason, I dissent from the portion of the majority disposition finding that a cause of action in con-

tract for quantum meruit exists based upon the terms of the employee handbook.

¶ 5 An employer's unilateral act of publishing its polices does not constitute the requisite "meeting of the minds" required for a contract. Where the terms of an employee handbook are not bargained for by the parties, any benefits conferred by it are mere gratuities. *Richardson v. Charles Cole Memorial Hospital*, 320 Pa.Super. 106, 466 A.2d 1084 (1983) (cited with approval in *Morosetti v. Louisiana Land and Exploration Co.*, 522 Pa. 492, 495–97, 564 A.2d 151, 153 (1989)). Unless an employer communicates a policy as part of a definite offer of employment, it is free to alter the policy as it sees fit. *Id.*

¶ 6 Attempts by this court to carve out exceptions to an employer's ability to disregard a non-bargained for promise as part of a verbal communication or as part of an employee handbook have been met with uniform disapproval by the supreme court. In *Paul v. Lankenau Hospital*, 375 Pa.Super. 1, 543 A.2d 1148 (1988), a divided *en banc* panel of the superior court applied the doctrine of equitable estoppel to allow a discharged employee to maintain a common law action based upon his reliance upon a verbal misrepresentation of the employer. The supreme court reversed and held that the doctrine of equitable estoppel is not an exception to the employment at-will doctrine. *Paul v. Lankenau Hospital*, 524 Pa. 90, 93–95, 569 A.2d 346, 348 (1990).

¶ 7 Several years later, in *Niehaus v. Delaware Valley Medical Center*, 429 Pa.Super. 119, 631 A.2d 1314 (1993), this court ruled in a divided three-member panel decision that an employee could sue a former employer for breach of contract where an employee handbook provided for rehire under the circumstances present. The complaint alleged that the employee had sought approval for a leave of absence under the terms of the handbook, that the approval was given, and that the employer then refused to rehire, despite a contrary provision in the handbook. The panel of this court found that a cause of action for breach of contract could be maintained since the employer had guaranteed rehire in the employee handbook and that it was "essential to avoid injustice" to enforce the promise. *Id.* at 1318. This holding was summarily reversed by the supreme court upon citation to its decision in *Paul v. Lankenau Hospital, supra.* *Delaware Valley Medical Center v. Niehaus*, 538 Pa. 481, 649 A.2d 433 (1994).

¶ 8 The law is clear that no cause of action, whether styled as one at law sounding in contract or as one in equity upon estoppel principles, may be maintained by an employee for enforcement of the provisions of an employee handbook where that handbook was not a bargained for portion of the offer of employment. Here, the handbook was not an element of the offer of employment since its effective date was May 1, 1998, and appellant was hired in April, 1997. The amended complaint contains no averments which would constitute additional consideration sufficient to bind the employer to the provisions of the handbook.

¶ 9 I would hold that the rejection of this court's decision in *Niehaus* by the Pennsylvania Supreme Court renders the majority's disposition to reinstate the breach of contract count of the complaint erroneous under existing law. *See also McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283, 290 (2000) (supreme court has steadfastly resisted any attempt to weaken the presumption of at-will employment in this Commonwealth). I, therefore, would affirm the order granting the preliminary objections in the nature of a demurrer.[2]

---

**2.** Any relief available to appellant would be through the Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (WPCL), which provides a statutory remedy for denial of wages and fringe benefits to which appellant contends he is entitled. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 696 A.2d 173, 176 (Pa.Super.1997), *affirmed on other grounds*, 561 Pa. 307, 750 A.2d 283 (2000).

¶ 10 I agree with the majority that the amended complaint fails to state a cause of action under the Fair Labor Standards Act, 29 U.S.C.A. § 201 *et seq.*

¶ 11 For the forgoing reasons, I dissent in part and concur in part with the result reached by the majority.