

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2003

# Garcia v. Matthews

Precedential or Non-Precedential: Non-Precedential

Docket 02-3318

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Garcia v. Matthews" (2003). *2003 Decisions.* Paper 618.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/618

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-3318

_____

EMILIO GARCIA,

Appellant

v.

NANCY MATTHEWS and MIDPENN LEGAL SERVICES
a/k/a CENTRAL PENNSYLVANIA LEGAL SERVICES

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 01-cv-01514)
District Judge: Honorable Sylvia Rambo

_____

Submitted Under Third Circuit LAR 34.1(a) April 10, 2003

Before: BARRY and ROSENN, Circuit Judges, and POLLAK, District Judge[*]

(Filed April 25, 2003)

_____

OPINION OF THE COURT

_____

ROSENN, Circuit Judge:

---

[*]Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

This appeal concerns discrimination claims under federal law, and a state law contract claim of Emilio Garcia ("Garcia"), against his former employer, MidPenn Legal Services ("MidPenn"), a legal services provider for low-income clients. MidPenn terminated Garcia in 1999 because of an alleged pattern of sexual harassment and inappropriate conduct toward female coworkers and clients. Garcia sued MidPenn and his supervisor Nancy Matthews in the United States District Court for the Middle District of Pennsylvania, alleging age and racial discrimination along with several state law claims including breach of contract, intentional infliction of emotional distress, fraud/deceit/misrepresentation, and defamation. The District Court dismissed all but one of the state law claims at an earlier stage of litigation. Only the statutory discrimination claims and breach of contract claim remain at issue here and the Defendants have moved for summary judgment as to them. The District Court granted the motion. We affirm.

I.

At the time of his termination, Garcia, then a 50-year-old Hispanic male, had worked for MidPenn for 24 years as a paralegal, handling primarily unemployment compensation cases. Prior to 1996 Garcia had never been formally disciplined by MidPenn. In early 1996 MidPenn reprimanded Garcia and gave him a warning for improper sexually oriented conduct toward a coworker at a holiday luncheon the prior month. In February 1998, MidPenn received a complaint that Garcia was stalking and harassing an employee of a neighboring agency. A MidPenn supervisor, John Mitton,

2

discussed the incident with Garcia, but took no further action at that time.

In late February 1998, Garcia began a three-month leave of absence due to an injury. While absent, new misconduct on his part came to light. In March 1998, MidPenn received another complaint charging Garcia with having persistently asked a MidPenn client out on dates and having attempted to meet her outside her work place. A review of Garcia's file by Matthews during this absence also revealed numerous cases that should have been closed. In addition, case files were inadequately annotated, and were sloppily kept. In March 1998, Garcia was held in criminal contempt for violating a Protection from Abuse Order obtained against him by his wife.

Because of the foregoing conduct, in May 1998 Garcia was placed on three-month probation when he returned from his leave of absence. MidPenn instructed him not to engage in any more conduct which might give the appearance of harassment. Garcia filed a grievance pursuant to company policies, which was denied at the first step. He appealed the denial, resulting in a hearing before the MidPenn director, who rejected his appeal. Garcia did not submit a procedurally proper appeal of the director's decision until five months later. During the spring of 1999, two female clients of MidPenn reported more instances of harassment and stalking by Garcia. The complaints included allegations that Garcia had asked the clients out on dates, called them repeatedly, made inappropriate comments to them, and showed up at their homes unannounced. As a result, in June 1999, MidPenn terminated Garcia.

Although Garcia engaged in some settlement discussions with MidPenn, he never invoked properly the grievance procedure available to him to contest his termination. Instead, he wrote to Central Pennsylvania Legal Services, a parent body of MidPenn. In turn, Pennsylvania Legal Services ordered MidPenn to convene a grievance hearing. MidPenn offered to do so, but ultimately failed to convene the hearing because of a dispute over the nature and content of the personnel files to be turned over to Garcia in preparation for the hearing. However, MidPenn permitted Garcia to bypass the first-step grievance and move directly to a hearing with the director. Rather than pursue the grievance further, Garcia initiated EEOC charges, and, upon securing a right-to-sue letter, filed suit in the District Court.

The District Court dismissed several of the claims pursuant to a Rule 12(b)(6) motion. As to the remaining claims of discrimination and breach of contract, MidPenn responded to all of Garcia's outstanding discovery requests. Although Garcia now contests the timeliness and adequacy of MidPenn's replies, there is no evidence he formally protested MidPenn's compliance before the District Court. The Defendants filed a motion for summary judgment. Garcia, without filing any motion for additional time, or informing the District Court about the alleged inadequacy of discovery compliance, filed his response to the motion eight days late under a time frame prescribed by the Local Rules of the Middle District of Pennsylvania. The District Court, based on the untimeliness of the response and the history of previous failures by Garcia to comply with

4

its procedures and deadlines, struck his reply brief and resolved the motion. The court found that Defendants had shown the absence of any material disputed issues and granted the motion. Garcia timely appealed.

## II.

This court exercises plenary review over a grant of summary judgment. Only if there is no evidence from which a rational person could conclude that the plaintiff's claim is meritorious should the claim be granted. <u>Clark v. Modern Group, Ltd.</u>, 9 F.3d 321 (3d Cir. 1993).[1]

The general rule of this court is that "[w]here a party has filed a motion for summary judgment, the opposing party is under an obligation to respond to that motion in a timely fashion and to place before the court all materials it wishes to have considered when the court rules on the motion." <u>Cowgill v. Raymark Industries, Inc.</u>,780 F.2d 324, 329 (3d Cir. 1985). Garcia failed to comply with local timeliness requirements, and he never sought additional time for his reply, nor did he complain to the District Court about MidPenn's alleged discovery abuses. Under these circumstances, it appears the District Court was correct in striking the reply. However, the reply added little to Garcia's case; and, even considering the reply and all of Garcia's arguments therein, his claims still fail

---

[1] For the discrimination claims, the district court had federal question jurisdiction, pursuant to 28 U.S.C. § 1331. The state law claim concerns a common nucleus of operative facts and federal jurisdiction is satisfied under 28 U.S.C. § 1367 (supplemental jurisdiction). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

as a matter of law.

III.

Garcia failed to rebut the clear evidence pointed out by MidPenn in its summary judgment motion. First, in connection with his breach of contract claim, Garcia, an employee at will, alleged that his personnel manual required that employees be afforded a grievance procedure to challenge disciplinary action and be treated with fairness and due process. At best, Garcia alleges that the guidelines and rules of his employer were posted at his workplace and provided to employees "at the time of being hired." The District Court noted -- and Garcia did not dispute -- that an employment manual or other workplace rules would be deemed a binding contract only where the benefit was extended at the time of hire, and where there is evidence by which a reasonable person would conclude that the employer intended to be bound by its terms. Bauer v. Pottsville Area Emergency Med. Servs., Inc., 758 A.2d 1265, 1269 (Pa. Super. 2000). Garcia has made no effort to show that MidPenn manifested an intent to be bound by its terms.

Moreover, Garcia's complaint alleged that his employer breached its contract with him by virtue of its failure to give him due process with regard to disciplinary actions; but the record offers no evidence that MidPenn failed to meet its personnel manual obligations. Garcia has not rebutted Defendants' assertions that he was at fault for all of the delays in his appeals; he did not appeal properly his original probation decision until

6

many months after the probation had expired.[2]  As to his termination grievance, there is no evidence that he followed the proper steps to begin a local grievance proceeding before going over MidPenn's head, to Pennsylvania Legal Services, to demand such a hearing.  And, after Pennsylvania Legal Services ordered a hearing, MidPenn's subsequent failure to convene one appears to have been due to Garcia's unwillingness to accept MidPenn's reasonable assurances that his personnel file had not been tampered with.

IV.

As to the federal statutory discrimination claims, Garcia argues that he suffered discrimination when MidPenn terminated his employment without giving him a grievance hearing prior to his discharge.  Garcia's claim fails, however, because a prima facie case requires that the plaintiff show that non-members of his or her protected class were treated more favorably (or that the position was filled by someone not of the protected classes).  Garcia has failed to show that similarly situated non-members of his classes were treated more favorably.  See Massarsky v. General Motors Corp., 706 F.2d 111, 118 (3d Cir. 1983) ("This prima facie case is easily made out: a plaintiff alleging a discriminatory layoff need show only that he is a member of the protected class and that

---

[2]This, however, does not fully explain why MidPenn did not at that time hear his grievance, although the record suggests it may have considered it moot because the probationary period had expired.  Even if one considers this instance a breach of due process, Garcia's contract claim still fails as a matter of law for the reasons discussed herein, including his inability to show the work rules were a binding contract.

7

he was [removed] from a job for which he was qualified while others not in the protected class were treated more favorably."); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

The crux of Garcia's argument is that younger, non-Hispanic members of MidPenn's staff were given grievance hearings to appeal adverse employment actions. However, the record in this case shows that Garcia was given an initial hearing for his May 1998 probation and that he was partly responsible for the lack of any hearing on his appeal because of his inability to comply with the procedural requirements. With respect to his subsequent termination, he failed properly to seek a hearing. The proper procedure was to initiate a grievance by filing a formal request to his supervisor. Instead, after engaging in a brief settlement colloquy with the attorney for MidPenn, he appealed directly to MidPenn's parent body, Pennsylvania Legal Services. The record also shows that he failed to invoke the Pennsylvania Legal Services mandate; he never formally sought a hearing from Defendant after the decision issued, despite MidPenn's invitation to him to do so and its explicit instructions that he needed to contact them to initiate proceedings.

Under these circumstances, one cannot plausibly conclude that Garcia was treated less favorably than non-members of his class, and his prima facie case fails. Garcia names only one other employee, Stephanie Michaels, as an example of a non-class member who received better treatment. However, he provides no evidence regarding the

8

circumstances of her treatment. Garcia's failure to rebut the Defendants' showing that the procedural shortcomings in the grievance procedure were the result of his own errors demonstrates the absence of the final prong of an employment discrimination prima facie case. Notably, Garcia has not shown any evidence of discrimination which might overcome this void.

Even assuming Garcia had made out a prima facie case for discrimination, he failed plausibly to rebut the Defendant's showing of a legitimate, nondiscriminatory reason for the termination. See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999) (once a defendant has plausibly articulated a non-discriminatory reason for its adverse treatment of employee, a plaintiff may defeat a motion for summary judgment by pointing to some evidence, direct or circumstantial, from which a factfinder would reasonably either disbelieve the employer's articulated legitimate reasons or believe that discriminatory reasons were the more likely source of the employer's action). Garcia has not shown, other than through conclusory, self-serving comments in his brief, that the reasons for the termination were pretextual. The evidence reflects that Garcia had engaged in a series of improprieties, most of which are unrebutted.[3] The complaints of harassment are well-documented; they were made independently by different complainants, some of whom worked for different offices and agencies. Garcia had been

---

[3]Garcia claims that some of his supervisors treated the offenses more leniently than did Matthews. This, however, does not detract from the seriousness of the allegations against Garcia, nor does it show Matthews acted pretextually.

9

warned after his 1998 probation for harassment not to do anything to give even the appearance of harassment, yet more accusations followed.

V.

Accordingly, Garcia's claims fail as a matter of law. The judgment of the District Court is affirmed. Each side to bear its own costs.

_____

TO THE CLERK:

Please file the foregoing opinion.


                                                            /s/ Max Rosenn
                                                            Circuit Judge