J-A23027-21

2022 PA Super 4

BARBARA EVANS : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
          Appellant :
:
:
:
          v. :
:
:
CAPITAL BLUE CROSS : No. 410 MDA 2021

Appeal from the Order Entered March 5, 2021
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2017-CV-6696

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.*

OPINION BY BENDER, P.J.E.:          **FILED: JANUARY 5, 2022**

Appellant, Barbara Evans, appeals from the trial court's March 5, 2021 order granting summary judgment in favor of Appellee, Capital Blue Cross ("CBC"). After careful review, we reverse and remand.

By way of background, at all times pertinent to this matter, Ms. Evans was a full-time, at-will employee of CBC. CBC hired her in June of 2002, and she worked there until March of 2016, at which time she went on medical leave.

At all relevant times, CBC provided its employees with short-term disability benefits under its Salary Continuation Benefit Plan ("the Program"), which was described in a summary plan description ("SPD"). In short, the Program provided "short[-]term continuation of some percentage of an eligible

_____

* Former Justice specially assigned to the Superior Court.

Employee's Weekly Earnings if he becomes Disabled from a covered accident, sickness, or pregnancy." **See** Complaint, 9/19/17, at Exhibit A ("SPD") at 4. All eligible active employees had coverage under the Program, and CBC enrolled them in it automatically. **Id.** The employees did not contribute towards the Program's cost, and CBC paid the employees who qualified for benefits through its payroll account or general assets. **Id.**

With respect to the Program, the SPD sets forth that, "[i]f[] while covered under this Benefit, You: 1) become Totally Disabled; 2) remain Totally Disabled; and 3) submit Proof of Loss to the Claims Evaluator[,] [CBC] will pay the Salary Continuation Amount." **Id.** at 5.[1] Under the SPD:

> **Total Disability** or **Totally Disabled** means that You are prevented by:
>
>> 1) Injury;
>>
>> 2) Sickness;
>>
>> 3) Mental Illness;
>>
>> 4) Substance Abuse; or
>>
>> 5) pregnancy;
>
> from performing the Essential Duties of Your Occupation, and as a result, You are earning less than 20% of Your Pre-disability Earnings.[2]

---

[1] At all relevant times, the claims evaluator was Hartford Life and Accident Insurance Company ("Hartford"). SPD at 9. The claims evaluator "is delegated the duties of [CBC] to determine benefits payable according to the terms and conditions of [t]he Program." **Id.** at 7.

[2] The SPD states that:

*(Footnote Continued Next Page)*

> **Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

*Id.* at 12 (emphasis in original). According to the SPD, benefit payments will stop on the earliest of, *inter alia*, "the date You are no longer Disabled." ***Id.*** at 6; ***see also id.*** at 10 (explaining that 'Disabled' "means Total Disability or Disabled and Working Disability"). The maximum duration of the benefits payable pursuant to the Program is 26 weeks if caused by injury or sickness. ***Id.*** at 4.

The SPD also addresses CBC's responsibilities under the Program. Specifically, it explains that CBC "is responsible for making payment for benefits due according to the terms and conditions of [t]he Program. [CBC's] responsibilities also include, but are not limited to: 1) deciding appeals of claims which were initially denied by the Claims Evaluator; and 2) making final determinations regarding eligibility for coverage." ***Id.*** at 7. In addition, the SPD gives CBC "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of [t]he Program." ***Id.***

_____

> **Essential Duty** means a duty that:
>
> 1) is substantial, not incidental;
>
> 2) is fundamental or inherent to the occupation; and
>
> 3) cannot be reasonably omitted or changed.
>
> Your ability to work the number of hours in Your regularly scheduled workweek is an Essential Duty.

SPD at 10 (emphasis in original).

at 9. Further, regarding legal actions against CBC, the SPD provides the following:

> **Legal Actions:** *When can legal action be taken against [CBC]?*
>
> Legal action cannot be taken against [CBC]:
>
>> 1) sooner than 60 days after the date of proof of loss is furnished; or
>>
>> 2) more than 3 years after the date Proof of Loss is required to be furnished according to the terms of [t]he Program.

*Id.* (emphasis in original).

In March of 2016, Ms. Evans says that she "developed an exacerbation of a Generalized Anxiety Disorder that also manifested into Major Depression Disorder." Ms. Evans's Brief at 7. She claims that, "[f]rom early March 2016 and all times material hereto, Ms. Evans['s] symptoms included daily anxiety attacks, daily panic attacks, asthma attacks, nose bleeds, daily coughing, vomiting, diarrhea[,] and full body tremors." *Id.* She timely applied for short-term disability benefits under the Program, and the claims evaluator — Hartford — approved the payment of benefits to her from her disability onset date of March 9, 2016 through May 26, 2016. *See id.* at 8.

Thereafter, by letter dated July 18, 2016, Hartford informed Ms. Evans that the benefits under the Program were not payable to her after May 26, 2016. *See id.*; CBC's Brief at 10. According to CBC, "based on [Hartford's] review of the information submitted by [Ms.] Evans'[s] medical providers, she no longer met the SPD's definition of being 'Disabled,' because her [medical] records indicated that she could return to work for another employer — just

not [CBC]." CBC's Brief at 10 (citations omitted). However, Ms. Evans insists that, "contrary to … Hartford's conclusion and as set forth in the contemporaneous [medical] records, [her] disability status was worsening from her disability onset date of March 9, 2016." Ms. Evans's Brief at 10 (citation omitted). Thus, she maintains that her benefits were wrongly terminated before the end of the 26-week maximum period for short-term disability benefits and, because her short-term disability was not approved through the maximum benefit end date of September 6, 2016, "Hartford would not consider her long[-]term disability benefit application…." *See id.* at 8 (citations omitted).

After Ms. Evans's short-term disability benefits were terminated and CBC denied her appeal, she filed a complaint against CBC, asserting claims for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 *et seq*. Therein, she alleged, among other things, that CBC "had a duty to fairly and equitably abide by and comply with all of the terms and conditions set forth in the SPD," and it "breached its duty to Ms. Evans by failing to abide by the terms and conditions of the SPD, [and] by willfully failing to provide [h]er with [short-term disability] benefits." Complaint at ¶¶ 31, 32. She also claimed that CBC's "failure to provide [her] with [short-term disability] benefits was done in violation of the WPCL." *Id.* at ¶ 36.

CBC subsequently filed a motion for summary judgment, arguing, *inter alia*, that Ms. Evans cannot establish the existence of an express or implied

contact. **See** CBC's Motion for Summary Judgment, 8/31/20, at ¶ 53. In addition, it asserted that Ms. Evans's WPCL claim fails because "in order to bring a WPCL claim, [she] must demonstrate that she was contractually entitled to compensation and that she was not paid. For the same reasons that she failed to establish a *prima facie* claim for breach of contract…, [she] also fails to establish a *prima facie* claim for violation of the WPCL…." **Id.** at ¶¶ 68-69.

On March 5, 2021, the trial court entered an order granting summary judgment in favor of CBC, explaining:

> The [c]ourt finds no genuine issue of fact regarding the existence of a contract, express or implied[,] for short[-]term[] disability benefits.[1] As [Ms. Evans] acknowledges, and contrary to the allegations in the [c]omplaint (paragraph 29), [CBC's] benefit plan is not a contract.
>
>> [1] As an aside, it is not disputed that [Ms. Evans] was eligible for benefits. In fact, she did receive [benefits] through May 2[6], 20[16]. Being "eligible" for such benefits is not the same as being "promised" benefits.
>
> In response to [CBC's] [m]otion for [s]ummary [judgment, Ms. Evans] now contends that her employment with [CBC] was the contract while at the same time admitting that her employment was at-will. While [Ms. Evans's] evolving positions may be difficult to reconcile, they do not create a genuine issue of material fact and the [c]ourt finds, as a matter of law, that there is no express or implied contract for [s]hort[-t]erm [d]isability [b]enefits.
>
> As this [c]ourt finds that [Ms. Evans] has failed to set forth a *prima facie* claim for [b]reach of [c]ontract, [Ms. Evans's] claim under the [WPCL] must also fail. [She] was not contractually promised [s]hort[-t]erm [d]isability [b]enefits.

Order, 3/5/21, at 1 (unnumbered pages).

Thereafter, on March 31, 2021, Ms. Evans filed a timely notice of appeal. The trial court did not direct Ms. Evans to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. It later issued a Rule 1925(a) opinion. Therein, with respect to Ms. Evans's breach of contract claim, the trial court elaborated that:

> In order for a contract to exist, four elements must be present: (1) an offer; (2) acceptance of an offer; (3) consideration; and (4) a mutual meeting of the minds.
>
> At her deposition, [Ms.] Evans was unable to identify: the date upon which she entered into the purported contract with [CBC]; any provision of the SPD that she contends created a contract between her and [CBC]; or any consideration that she tendered in support of a contract between her and [CBC] (and, in fact, the SPD provides that covered employees are automatically enrolled and do not contribute to the program cost).
>
> As such, [Ms. Evans] has failed to adduce evidence that: [CBC] made her an offer of short-term disability benefits, that she accepted [CBC's] offer, that there was a bargained-for exchange of valuable consideration in support of the alleged contract, or that there was a mutual meeting of the parties' minds with respect to any contractual obligation to supply short-term disability benefits. She also did not identify any acts performed by her or CBC to show that the parties intended to create a binding obligation with respect to these benefits.
>
> Moreover, [Ms. Evans] was an at-will employee who had neither the expectation nor right to employment for a definite term, much less a promise of specific employment benefits; [CBC's] employees make no contribution towards the cost of the short-term disability program; and payments for the benefits are made from [CBC's] general assets.

Trial Court Opinion, 4/13/21, at 3-4 (internal citations and paragraph numbers omitted).

Presently, Ms. Evans raises two issues for our review:

[1.] Was there a contract, either express or implied, providing short-term disability benefits between [Ms. Evans] and her employer?

[2.] Did … [Ms. Evans] have a right of action to recover unpaid short-term disability benefits under the [WPCL], 43 P.S. §§ 260.2a, 260.9a, providing actions to recover unpaid wages, including fringe benefits or wage supplements?

Ms. Evans's Brief at 3.[3]

At the outset of our review, we acknowledge that:

[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. On appellate review, then,

an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de*

_____

[3] Before delving into the merits of Ms. Evans's issues, we note that the Western Pennsylvania Employment Lawyers Association and National Employment Lawyers Association-Eastern Pennsylvania have filed an *amicus curiae* brief in this matter. CBC contends that this *amicus curiae* brief is not properly before this Court because "[t]he *amici* did not participate in the proceedings below and they have neither sought nor received leave of the Court to file their brief." CBC's Brief at 4 n.2. We disagree. Pennsylvania Rule of Appellate Procedure 531(b)(1)(i) provides that "[a]n *amicus curiae* may file a brief … during merits briefing…." Pa.R.A.P. 531(b)(1)(i). Moreover, we reject CBC's claim that the *amici's* brief is improperly before us because it does not bring additional, relevant matter for this Court's consideration and attempts to raise arguments not advanced by Ms. Evans below. Thus, we will consider the *amicus curiae* brief in our review.

*novo*. This means we need not defer to the determinations made by the lower tribunals.

To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (cleaned up).

In Ms. Evans's first issue, she contests whether a contract existed between her and CBC for short-term disability benefits. ***See*** Ms. Evans's Brief at 3. Specifically, she argues that "the provisions of the Program are set forth in writing in the SPD and constitute an offer of employment which [she] accepted by continuing performance of her duties." ***Id.*** at 17 (footnote and emphasis omitted).[4] Further, she avers that, though she was an at-will

_____

[4] Ms. Evans sufficiently raised this unilateral contract theory in her response to CBC's motion for summary judgment. ***See*** Response to Motion for Summary Judgment, 9/28/20, at ¶ 19 ("The SPD in place at the outset of Ms. Evans'[s] disability[] memorialized the terms of the [f]ringe benefits promised to Ms. Evans as a condition for her work performed. An employee handbook can create a contractual relationship while not supplanting the at-will employer-employee relationship.") (citations omitted); ***id.*** at ¶ 40 (stating that "[a]n employer can create a unilateral contract with [an] employee-at-will by offering additional terms of employment conditioned upon the employee's continued performance of his job") (citations omitted); ***id.*** at ¶¶ 55-89 ("The SPD, not dissimilar to an employee handbook, was not the basis of the contract but rather memorialized the benefits for which Ms. Evans would be eligible to receive in consideration of the work performed for CBC."). She also sufficiently pled her unilateral contract theory in her complaint. ***See*** Complaint at ¶ 3 ("At all times material hereto, [Ms. Evans] was employed by [CBC], and pursuant to [her] employment with [CBC], [she] was eligible to receive short[-]term disability benefits."); ***id.*** at ¶¶ 28-30 ("At all times material hereto, [CBC] communicated, distributed and uniformly implemented a [SPD], in which qualified [CBC] employees were entitled to [short-term disability] benefits. [CBC's] SPD created an express and implied contract
*(Footnote Continued Next Page)*

employee, "the at-will doctrine merely addresses one aspect of her employment relationship with CBC, that is, the parties can terminate the employment relationship at any time. The at-will doctrine does not permit CBC to refuse to pay for compensation and benefits earned prior to termination." *Id.* at 18. She also observes that, "[i]f the lower court is correct that there is no employment contract governing Ms. Evans'[s] right to benefits under the Program, then she has no way to enforce the terms of her employment agreement, including her right to disability benefits under the Program." *Id.* She claims that "[s]uch a result is contrary to the plain terms of the Program itself, in that the SPD sets out time limits for filing a lawsuit to enforce the Program and, therefore, on its face contemplates an enforcement mechanism." *Id.* Finally, she insists that, "insofar as her right to apply for long[-]term disability benefits is contingent on approval of short[-]term disability for the maximum period, a claims administrator like Hartford could simply terminate short[-]term disability prematurely with impunity, and avoid ever having to pay under the long[-]term disability policy, rendering the long[-]term disability plan an illusory benefit." *Id.* at 18-19.

_____

between [CBC] and Ms. Evans inasmuch as the SPD was communicated and distributed to [Ms. Evans], and all other employees, as an employment benefit, and reasonably relied on as a financial 'safety net' in the event a qualified employee suffered from a disability. At all times material hereto, Ms. Evans reasonably expected, in the event of a disabling condition, to receive [short-term disability] benefits in accordance with the terms of the SPD."); *see also Rellick-Smith v. Rellick*, 147 A.3d 897, 900 n.8 (Pa. Super. 2016) ("[U]nder Pennsylvania's fact pleading system, the complainant need only state the material facts upon which a cause of action is based.") (citation omitted).

In support of her argument, Ms. Evans points us to ***Bauer v. Pottsville Area Emergency Med. Servs., Inc.***, 758 A.2d 1265 (Pa. Super. 2000). In ***Bauer***, an ambulance service company employed Bauer as an emergency medical technician and provided its employees with an employee handbook, which indicated that an employee working at least 36 hours per week for 90 days would be treated as a full-time employee. ***Id.*** at 1267. Subsequently, Bauer worked 36 hours per week for over 90 days and believed that he had a right to receive full-time wages, health insurance, and other benefits in accordance with the terms of the employee handbook. ***Id.*** After over 200 days of working 36-hour weeks, he informally complained to his employer about not receiving full-time benefits. ***Id.*** When Bauer complained, his employer reduced his hours to zero. ***Id.*** at 1268.

Thereafter, Bauer filed a complaint against his employer, asserting, among other things, that it breached the terms of the employee handbook, which were enforceable as provisions of an implied contract. ***Id.*** at 1267. The employer subsequently filed preliminary objections, arguing, *inter alia*, that the employee handbook contains a provision evidencing its intent to create an at-will employment relationship. ***Id.*** at 1268. The trial court sustained the employer's preliminary objections and dismissed Bauer's complaint. ***Id.*** Bauer appealed. ***Id.***

On appeal, Bauer argued that he relied on the terms and provisions of the employee handbook as creating a duty on his employer's part to provide him with full-time benefits once he worked 36 hours per week for 90 days.

*Id.* In response, the employer contended that the handbook specifically stated that it is an "employer at will" and that it reserved the right to terminate employment at any time. *Id.* Therefore, the employer claimed that the handbook does not create a binding contract with Bauer. *Id.*

> Upon review, this Court explained that:

> A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook. The handbook must contain a clear indication that the employer intended to overcome the at-will presumption. We have held that it is for the court to interpret the handbook to discern whether it contains evidence of the employer's intention to be bound legally.

> Provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties. A unilateral contract is a contract wherein one party makes a promissory offer which calls for the other party to accept by rendering a performance. In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms. The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required.

*Id.* at 1269 (citations omitted).

> Applying this law to Bauer's case, we then reasoned:

> In its [o]pinion, the trial court found there was no contract upon which to base a cause of action because [the employer] evidenced its intent to maintain the at-will employment relationship. We disagree. In this case, a reasonable person in [Bauer's] position would understand that his continued performance would bear the fruits of his employer's policies. [Bauer] worked the requisite 36 hours per week for [a]n excess of 90 days and received none of the benefits provided for in the handbook.

*Id.* Thus, we determined that Bauer "may be entitled to the benefits applicable to a full-time employee for the period during which he fulfilled the terms of the employee handbook. Accordingly, the trial court abused its discretion when it concluded the facts … are insufficient to support a claim of breach of contract." *Id.* at 1270 (footnote omitted).

*Bauer* has subsequently been interpreted by this Court as establishing that "an employee handbook could create a contractual relationship while not supplanting the at-will employer-employee relationship[.]" *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 940 (Pa. Super. 2011). *See also id.* at 941 ("[T]he provisions comprising the unilateral contract may be viewed as a contract incidental or collateral to at-will employment. An employer who offers various rewards to employees who achieve a particular result or work a certain amount of overtime, for example, may be obligated to provide those awards to qualifying employees, although retaining the right to terminate them for any or no reason.") (citation omitted).

Based on *Bauer* and *Braun*, we agree with Ms. Evans that the terms and conditions of the SPD constituted a unilateral offer of employment, which she accepted by continuing the performance of her duties. As in *Bauer*, a reasonable person in Ms. Evans's position would understand that her continued performance would entitle her to benefits under the Program if she met its requirements. *See* SPD at 5 ("If, while covered under this Benefit, You: 1) become Totally Disabled; 2) remain Totally Disabled; and 3) submit Proof of Loss to the Claims Evaluator; [CBC] *will* pay the Salary Continuation

Amount.") (emphasis added); *id.* at 7 ("[CBC] *is* responsible for making payment for benefits due according to the terms and conditions of [t]he Program.") (emphasis added). Moreover, while the SPD sets forth that CBC makes final determinations regarding eligibility for coverage and has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of [t]he Program[,]" *id.* at 7, 9, it also indicates that legal action can be taken against CBC in connection with the SPD. *See id.* (addressing when legal action can be taken against CBC). The fact that legal action can be taken against CBC contradicts that it has full and final authority to interpret the terms and provisions of the Program and suggests that CBC intends to be legally bound by the SPD. *See* footnote 6, *infra*. We also note that, based on our review, the SPD contains no disclaimers explaining that it should not be interpreted as a contract.[5] Thus,

---

[5] *Cf. Diehl v. Electronic Data Systems Corp.*, No. 1:07-CV-1213, 2008 WL 2705540, at *5 (M.D. Pa. 2008) ("[T]he court concludes that the disclaimers contained in the … short-term plan eliminate the possibility that a reasonable employee in Diehl's position could have interpreted the plan as a contract.") (citation omitted); *Cooper v. Broadspire Services, Inc.*, No. 04-5289, 2005 WL 1712390, at *3 (E.D. Pa. 2005) ("[The p]laintiff's bare allegation that her employment relationship was contractual in her response to [the] defendants' motion to dismiss is insufficient to rebut the presumption of at-will employment, particularly in light of the [employer's] employment at-will policy that clearly states: '[e]mployment at-will is a term and condition of employment and continued employment for all associates employed by [the employer].' [The employer's] employment at-will policy further clarifies that '[n]o commitment or other term of employment shall be inferred or otherwise assumed from any source whatsoever, written or oral, including but not limited to any policies or statements of [the employer]. Policies and statements are not a contract, express or implied….'") (citation omitted). We

*(Footnote Continued Next Page)*

we conclude a reasonable person in Ms. Evans's position would understand that her continued performance would obligate CBC to provide her with short-term disability benefits if she met the terms and conditions of the Program. Whether Ms. Evans met the terms and conditions of the Program — specifically, if she could have returned to work for another employer after May 26, 2016 — is a question of fact that the parties dispute.[6]

---

note that, "[w]hile decisions from federal district courts are not binding on this Court, we may rely on them for persuasive authority." *AmQuip Crane Rental, LLC v. Crane & Rig Services, LLC*, 199 A.3d 904, 918 n.4 (Pa. Super. 2018) (citation omitted).

[6] We reject CBC's alternative argument that, "even if the Court finds that the trial court committed legal error in its conclusion that no contract for short-term disability benefits existed between [Ms.] Evans and [CBC]…, the error is harmless because [CBC] complied with the procedures described in the SPD when denying [Ms.] Evans'[s] claim for benefits after May 26, 2016." CBC's Brief at 27. In other words, CBC says that, "even if the Court finds that [Ms.] Evans can establish the existence of a contract, she cannot prove that it was breached." *Id.* at 34. CBC details that:

> The record is clear that [CBC] and … Hartford at all times acted in a manner consistent with and provided for by the SPD as it related to [Ms.] Evans'[s] claim for short-term disability benefits. [CBC] (and … Hartford) exercised its discretion in reaching the conclusion that [Ms.] Evans'[s] medical records did not establish that she remained "Disabled" within the meaning of the SPD after May 26, 2016. That [Ms.] Evans disagrees with [CBC's] interpretation and administration of its short-term disability program is inconsequential to the question of whether [CBC] breached any duty it owed her with respect to short-term disability benefits.

*Id.* at 33-34 (emphasis omitted).

We disagree with this argument given the ambiguity in the SPD. As mentioned *supra*, while the SPD gives CBC full discretion and authority to
*(Footnote Continued Next Page)*

Based on the foregoing, the trial court erred when it determined that no contract for short-term disability benefits existed between Ms. Evans and CBC. We therefore reverse its order granting summary judgment in favor of CBC on Ms. Evans's breach of contract claim and remand for further proceedings.

In Ms. Evans's second issue, she asks whether she has a right of action to recover unpaid short-term disability benefits under the WPCL. **See** Ms. Evans's Brief at 3. In granting summary judgment on this claim, the trial court determined that because Ms. Evans "failed to set forth a *prima facie* claim for [b]reach of [c]ontract, [her] claim under [the WPCL] must also fail. [Ms. Evans] was not contractually promised [s]hort[-t]erm [d]isability [b]enefits." Order, 3/5/21, at 1 (unnumbered). Because we have ascertained that CBC is contractually obligated to provide Ms. Evans with short-term disability benefits to the extent she met the terms and conditions of the Program, the trial court's rationale for granting summary judgment on Ms. Evans's WPCL claim falters. Accordingly, we reverse the trial court's order

_____

determine eligibility for benefits, the SPD also provides for legal action against CBC, which directly conflicts with CBC's having full and final authority to interpret the SPD. It is well-established that, "[w]here the language of the contract is ambiguous, the provision is to be construed against the drafter[,]" *i.e.*, CBC. **See, e.g.**, **Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.**, 77 A.3d 1, 7 (Pa. Super. 2013) (citation omitted). Thus, we conclude that CBC does not have sole discretion to make benefit eligibility determinations, and it therefore could have breached the SPD by wrongly determining that Ms. Evans did not establish that she remained 'Disabled' within the meaning of the SPD after May 26, 2016.

granting summary judgment on Ms. Evans's WPCL claim and remand for further proceedings.[7]

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/05/2022

---

[7] We deem meritless CBC's alternative argument that, "even if the Court concludes that [Ms.] Evans established the contract prong of a WPCL claim, she cannot show that [CBC] failed to pay such benefits when it was obligated to do so." CBC's Brief at 40. In support, it explains that CBC "did not break any promise to pay [Ms.] Evans short-term disability benefits. … [A]n employee eligible to participate in the SPD program is not guaranteed benefits upon making a claim or submitting documentation; rather, they must meet the terms of the [P]rogram necessary to qualify for the benefits." *Id.* at 39 (citations omitted). Here, Ms. Evans contends that she met the terms of the Program after May 26, 2016; CBC insists that she did not. Although the SPD gives CBC full discretion and authority to determine eligibility for benefits, it also contemplates that legal action can be taken against CBC, and we reiterate that ambiguities in a contract must be construed against the drafter. *See* footnote 6, *supra*. Given that a question of material fact exists as to whether Ms. Evans met the terms of the SPD after May 26, 2016, and because CBC does not have full and final discretion under the SPD to determine eligibility as legal action may be taken against it, we cannot affirm on this alternative basis. It is simply not clear that CBC was not obligated to pay Ms. Evans benefits after May 26, 2016.