**WARRINGTON CHAPMAN, Appellant/Plaintiff**

**v.**

**MARY ADAMS CORNWALL and VIRGIN ISLANDS WASTE**
**MANAGEMENT AUTHORITY, Appellees/Defendants**

S. Ct. Civ. No. 2012-0032

Supreme Court of the Virgin Islands

May 15, 2013

MARTIAL A. WEBSTER, SR., ESQ., St. Croix, USVI, *Attorney for Appellant*.

KERRY E. DRUE, ESQ., Law Offices of Kerry E. Drue, St. Thomas, USVI, *Attorney for Appellees*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and MOORE, *Designated Justice.*[1]

## OPINION OF THE COURT

(May 15, 2013)

HODGE, *Chief Justice.* Warrington Chapman appeals from the Superior Court's March 30, 2012 Order, which entered summary judgment in favor of the Virgin Islands Waste Management Authority ("VIWMA") and Mary Adams Cornwall, its Executive Director. For the reasons that follow, we affirm the March 30, 2012 Order.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

Chapman applied for a position as a Territorial Landfill Operations Manager with VIWMA in December 2003. (J.A. 29.) Although the position did not require a graduate degree, Chapman stated on his curriculum vitae that he had earned a master's of science degree. (J.A. 13, 22, 29, 41.) VIWMA hired Chapman in December 2004, and in June 2005, promoted him to Director of Solid Waste. (J.A. 30.) At that time, Chapman was not required to submit a new employment application for the position; however, approximately two years later, VIWMA requested that he do so. (*Id.*) Chapman completed the application on May 17, 2007, again indicating that he earned a master's degree, specifying that he obtained this degree from the State University of New York ("SUNY"); yet, roughly twenty minutes later, Chapman completed a second application, which omitted that master's degree.[2] (J.A. 30-31, 47-50.)

---

[1] Associate Justice Ive Arlington Swan is recused from this matter. The Honorable Thomas K. Moore has been designated to sit in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

[2] The parties dispute the reason Chapman submitted a second application on May 17, 2007. According to VIWMA, Chapman was asked to redo the application because portions of his first application were illegible. (J.A. 66.) Chapman, however, maintains that he completed the second application after discovering that SUNY did not recognize his master's program. (J.A. 30-31, 42.)

On June 21, 2009, Cornwall sent Chapman a memorandum concerning his failure to submit verification of his master's degree. (*See* J.A. 41, 66.) Chapman responded on July 2, 2009, explaining that after he completed the coursework necessary for the degree, he was advised that the program had not been sanctioned or accredited by SUNY and would be terminated. (J.A. 41-44.) Chapman further represented that SUNY advised him that it would nevertheless confer a master's of science degree, but that he discovered in the process of responding to VIWMA's inquiry that the degree was never conferred and that all records relating to the unauthorized program were expunged. (*Id.*) Cornwall terminated Chapman on July 10, 2009, on the grounds that he falsified his employment credentials. (J.A. 62-63.)

On December 9, 2010, Chapman filed suit against Cornwall and VIWMA for breach of contract, wrongful discharge, and defamation. (J.A. 74-78.) According to Chapman, VIWMA breached his contract by terminating him because the stated grounds for the action — "dishonesty and falsifying information" — were merely a pretext.[3] (J.A. 76.) He asserted that this termination also violated the Virgin Islands Wrongful Discharge Act,[4] and that Cornwall and VIWMA "intentionally and maliciously published false and defamatory statements about [him], and caused those statements to be published in the workplace, which statements placed [him] in a false light . . . ." (J.A. 76-77.)

Cornwall and VIWMA moved for summary judgment on June 1, 2011. In their motion, they contended that Chapman was an exempt, government employee, rather than a contract employee, and that, consequently, his breach of contract claim could not be sustained. (J.A. 16-17.) Furthermore, regarding the wrongful discharge claim, they argued that the Wrongful Discharge Act is not applicable to VIWMA, and Cornwall contended that she is also "shielded by the immunity from tort liability granted to employees by [title 29, section 496 of the Virgin Islands Code], the statute creating VIWMA." (J.A. 17.) As to the defamation claim, the appellees argued that Chapman's complaint failed

---

[3] Chapman alleges that in June 2009 — two years after submitting the application for the Director of Solid Waste position — upon his refusal to comply with what he deemed to be improper requests made by Cornwall, he was again questioned about his credentials and ultimately terminated the following month. (J.A. 59-60, 66-67.)

[4] V.I. CODE ANN. tit. 24, § 76 *et seq.*

to identify any false or defamatory statements, and that truth served as an absolute defense to any statements relating to Chapman's employment application, since it is undisputed that Chapman never obtained a master's degree as he had represented. (J.A. 17-18.)

The Superior Court, in its March 30, 2012 Order, fully agreed with Cornwall and VIWMA and entered summary judgment in their favor. (J.A. 8-10.) Chapman timely filed his Notice of Appeal on April 10, 2012. (J.A. 5.)

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). A judgment is considered to be final for purposes of this statute if it "disposes of all the claims submitted to the Superior Court for adjudication." *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012). Because the Superior Court's March 30, 2012 Order disposes of all of the claims submitted to it for adjudication, that Order constitutes a final order, and this Court possesses jurisdiction over Chapman's appeal.

This Court exercises plenary review of summary judgment decisions. *See Joseph v. Daily News Publ'g Co.*, 57 V.I. 566, 581 (V.I. 2012) (noting that when reviewing a grant of summary judgment, this Court applies the same test the trial court should have used in deciding the summary judgment motion in the first instance). The moving party must identify those portions of the record that demonstrate the absence of a genuine issue[5] of material fact, at which point the burden shifts to the non-moving party to present "affirmative evidence" from which a jury might reasonably return a verdict in his favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.

---

[5] The 2010 Amendment to Rule 56 of the Federal Rules of Civil Procedure revised subdivision (a) to contain the summary judgment standard previously reflected in subdivision (c), and changed the word "issue" to "dispute" because the term "better reflects the focus of a summary-judgment determination." FED. R. CIV. P. 56 advisory committee's note.

Ed. 2d 202 (1986) (noting that the non-moving party cannot rest on his pleadings or bare assertions, but must set forth *specific facts* to show a genuine issue of material fact) (citing former FED. R. CIV. P.[6] 56(e)) (emphasis added).

The Court will affirm a grant of summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008).

## B. Breach of Contract

To establish a breach of contract claim, Chapman must prove that a contract existed, that there was a duty created by that contract, that such duty was breached, and that he suffered damages as a result. *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009). In his appellate brief, Chapman contends that the Superior Court erred when it held that no contract existed between him and VIWMA. According to Chapman, sections 451 through 690 of title 3 of the Virgin Islands Code — which establish the Personnel Merit System — as well as VIWMA's human resources manual, "form the basis of [a] bilateral enforceable contract, expressed and implied, between [himself] and VIWMA." (Appellant's Br. 14.) On appeal, VIWMA and Cornwall renew the argument that persuaded the Superior Court: that no contract existed because government employees are not hired on a contract basis and Chapman was at all times an unclassified or exempt government employee. We agree with Chapman that the Superior Court erred when it found that no contract existed solely by virtue of his status as a full-time government employee. In *Williams-Jackson v. Public Employees Relations Board*, 52 V.I. 445, 455 (V.I. 2009), we noted that "[i]t is a fundamental principle that government, in an exercise of authority, must derive its power to act from a source which grants it." While VIWMA is subject to the provisions of the Personnel Merit System, its powers are set forth, predominantly, in title 29, chapter 8, sections 494-500q of the Virgin Islands Code. Section 500(d) of this chapter provides as follows:

---

[6] The Federal Rules of Civil Procedure are made applicable to the Superior Court through Superior Court Rule 7, but only to the extent they are not inconsistent with local laws or rules. *Rieara v. People*, 57 V.I. 659, 667 n.5 (V.I. 2012).

> The Executive Director shall administer the affairs of the Authority including matters related to the day-to-day operations, contracting, procurement, administration and personnel including the hiring of such officers, agents, or employees, permanent or temporary, and *by contract such operating personnel*, consulting engineers, superintendents, managers, fiscal, legal and other technical experts, and others, as may be deemed necessary, and shall determine their qualifications, duties, tenure and compensation.

29 V.I.C. § 500(d) (emphasis added).

When ascertaining the meaning of a statute, "[g]enerally, relative and qualifying or modifying words, phrases, and clauses should be referred to the word, phrase, or clause with which they are grammatically connected." 73 AM. JUR. 2D *Statutes* § 128. "It is presumed that the legislature in phrasing a statute knows the ordinary rules of grammar and that the grammatical reading of a statute gives its correct sense." 73 AM. JUR. 2D *Statutes* § 131 ("When determining the meaning of an unambiguous statute, the court must apply the ordinary rules of grammar unless they lead to an absurd result."); *see Gilbert v. People*, 52 V.I. 350, 357 (V.I. 2009) (using standard English grammar to determine statutory meaning); *see also Galloway v. People*, 57 V.I. 693, 702 (V.I. 2012) (same).

A plain reading of section 500(d) indicates that the Executive Director (1) may hire such "officers, agents, or employees, permanent or temporary . . . as may be deemed necessary," and (2) may hire by contract "such operating personnel, consulting engineers, superintendents, managers, fiscal, legal and other technical experts, and others, as may be deemed necessary." 29 V.I.C. § 500(d). The phrase "by contract" modifies "hiring," but only as to the list of positions that follow. Accordingly, it is apparent that VIWMA is authorized by statute to hire by contract, as it relates to certain positions or categories of positions.

The Notice of Personnel Action memorializing Chapman's termination indicates that he was in the Operations Division. (J.A. 40.) As noted, section 500(d) clearly allows VIWMA to hire operating personnel by contract. During oral argument in this matter, the appellees conceded that VIWMA had the authority to fill Chapman's position on a contract basis, but argued that this authority is discretionary and was not exercised in this particular case. However, even though Chapman could have been

438

hired by contract, and although he created a genuine dispute of fact regarding the formation of a contract by submitting evidence that he was offered the position of Director of Solid Waste, that he left his previous position to accept the offer, performed work in this new position, and received a salary in exchange for his services, we nevertheless affirm the dismissal of his breach of contract claim because he failed to submit evidence of any duty or breach.[7]

■ Although Chapman argues that his termination violated the human resources manual and some courts have held that employee manuals or handbooks may, in certain instances, establish a contract between an employer and its employees,[8] Chapman did not identify any duty created by the manual that VIWMA or Cornwall breached. Nor did he produce any evidence that VIWMA or Cornwall intended to be contractually bound by the provisions in the manual or evidence that a reasonable person would have believed such intent existed. In fact, Chapman failed to file a copy of the manual in the underlying Superior Court proceedings, even though the appellees sought summary judgment, in part, on the ground that Chapman had not provided any evidence of an actual contract or its terms.[9] *See Calvasina v. Wal-Mart Real Estate Business Trust*, 899 F. Supp. 2d 590, 607 n.10 (W.D. Tex. 2012) (declining, at summary judgment, to consider terms of the employee handbook when the

---

[7] In its March 30, 2012 Order, the Superior Court relied on the fact that a Notice of Personnel Action had been generated for Chapman, which indicated that he was being hired as an exempt employee. However, this Court has previously held that a Notice of Personnel Action — without more — does not establish a particular individual's status. *See Gov't of the V.I. v. Crooke*, 54 V.I. 237, 257 (V.I. 2010) (characterizing individual as a classified employee despite a Notice of Personnel Action identifying his position as exempt); *see also Iles v. De Jongh*, 638 F.3d 169, 175, 55 V.I. 1251 (3d Cir. 2011).

[8] *See, e.g., Monaco v. American General Assur. Co.*, 359 F.3d 296, 308 (3d Cir. 2004) (applying New Jersey common law); *Garcia v. Matthews*, 66 Fed. Appx. 339, 342 (3d Cir. 2003) (noting that an employment manual may be deemed a binding contract where "a reasonable person would conclude that the employer intended to be bound by its terms"); *Fraser v. Kmart Corp.*, Civ. No. 2005-0129, 2009 U.S. Dist. LEXIS 35253 (D.V.I. Apr. 24, 2009) (noting that an employee manual can be considered a contract only where there is mutual assent).

[9] Pursuant to this Court's December 5, 2012 Order, VIWMA and Cornwall filed a copy of page 6 of VIWMA's human resources manual, which they cited to in their brief. The manual provides that the policies set forth in it "are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind, or a contract of employment between VIWMA and any of its employees." Nonetheless, as this document was not before the Superior Court, it is not a part of the record in this matter.

handbook was never provided to the court and there was otherwise "no evidence concerning the contents of the [h]andbook"); *see also Anthony v. FirstBank V.I.*, S. Ct. Civ. No. 2010-0054, 2013 V.I. Supreme LEXIS 5 (V.I. Jan. 17, 2013) ("The non-moving party may not rest upon mere allegations but must present *actual evidence* showing a genuine issue for trial.") (emphasis added) (quoting *Williams*, 50 V.I. at 194-95). Accordingly, Chapman failed to produce sufficient evidence to create a genuine dispute as to possible contract terms or duties derived from VIWMA's human resources manual.

In addition to VIWMA's human resources manual, Chapman also relies on the statute codifying the Personnel Merit System for his contract claim. *See* 3 V.I.C. § 451 *et seq.* As a threshold matter, in claiming that this statute forms the basis of his employment agreement, Chapman takes a position not unlike that of the appellees — that he was an employee governed by statute.[10] Although Chapman, once again, does not point specifically to the provisions allegedly breached by his termination, he claimed entitlement to civil service protection as a result of his termination, alleging that he was not truly an "exempt" employee. (*See* J.A. 36-37.)

 Even if we were to assume, without deciding, that an individual could use a breach of contract action as a vehicle to seek redress for a violation of a Virgin Islands statute governing public employment, we would still find that summary judgment was warranted in this particular case. Under the Personnel Merit System, "regular employees"[11] are entitled to appeal their dismissal before the Public Employee Relations Board ("PERB"). *See* 3 V.I.C. § 530(a). Even if a finder of fact could determine that Chapman met the criteria for a regular employee, the record contains absolutely no evidence that he filed an appeal of his termination with PERB, even though PERB — were it to conclude that Chapman was not an exempt employee — could have fashioned an appropriate remedy. Chapman did not even claim to be entitled to civil

---

[10] Where a public sector employee simply seeks to vindicate rights established by statute, without more, courts have treated the claim as one governed by statute, rather than finding the statute to have created contractual rights in the employee. In such cases, an employee must adhere to grievance procedures outlined in the statute. *See, e.g., Hom v. Utah Dep't of Pub. Safety*, 962 P.2d 95, 99-101 (Utah Ct. App. 1998).

[11] For discussion of the term "regular employee," see 3 V.I.C. § 530(a)(2)(C) and *Iles*, 638 F.3d at 176-77.

service protection, nor did he so much as question his classification as an "exempt" rather than "classified"[12] employee until the summary judgment stage of these proceedings. Since Chapman failed to exhaust his administrative remedies before bringing suit in the Superior Court, he would be unable to maintain his breach of contract claim on the basis that he was entitled to civil service protection, even if he had been a classified[13] employee. *See, e.g., Lucero v. Bd. of Regents of Univ. of N.M.*, 2012 NMCA 55, 278 P.3d 1043, 1046 (N.M. Ct. App. 2012) (noting that "[c]ourts from other jurisdictions have uniformly applied the same rule, regardless of whether the employer is a public entity or a private entity," that employee must exhaust all grievance procedures prior to bringing suit for breach of contract) (collecting cases).

 Although the failure to exhaust available administrative remedies should be a sufficient basis to affirm the Superior Court's grant of summary judgment on the breach of contract claim, we will still consider Chapman's claim that he was fired for pretextual reasons unrelated to his false representation of having obtained a master's degree, in breach of a duty of good faith and fair dealing, because we have not determined that no contract existed between the parties, and the implied duty of good faith and fair dealing arises by implication through the existence of a contract itself. RESTATEMENT (SECOND) OF CONTRACTS § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").[14] However, even if the duty of good faith and fair dealing is applicable to Chapman's employment relationship, we nevertheless find that summary judgment on the theory that this covenant was breached is appropriate. "The duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations. A successful claim . . . requires proof of acts amounting to fraud or deceit on the part of the employer." *Pennick v. V.I. Behavorial Serv., Inc.*, No. 2006-0060,

---

[12] The term "classified" is synonymous with "career service" or "non-exempt" positions. 3 V.I.C. § 451a(d); *Williams-Jackson*, 52 V.I. at 452 n.4.

[13] Notably, even if Chapman had been a non-exempt employee, and therefore a member of the career service, he would not have necessarily been considered a "regular" employee for purposes of civil service protection. *See, e.g., Iles*, 638 F.3d at 173-74.

[14] Restatements of the Law may apply to the Virgin Islands through 1 V.I.C. § 4, subject to the authority of this Court and the Superior Court to shape the common law of the Territory. *Banks v. International Rental and Leasing Corp.*, 55 V.I. 967, 974-80 (V.I. 2011).

2012 U.S. Dist. LEXIS 23402 (D.V.I. App. Div. Feb. 22, 2012) (internal quotation marks and citations omitted) (unpublished); *see also Francis v. Pueblo Xtra Intern., Inc.*, 412 Fed. Appx. 470, 475 (3d Cir. 2010). Regardless of whether Chapman presented evidence that would have allowed a finder of fact to conclude he was terminated for pretextual reasons, he did not present sufficient evidence concerning this alleged "pretext" to have allowed a finder of fact to determine that the actions of Cornwall or VIWMA amounted to fraud or deceit. Instead, he merely alleged, without any proof, that he was terminated for refusing to comply with purportedly improper requests made by Cornwall. (J.A. 59-60, 66-67.) Consequently, Chapman failed to establish a genuine dispute of any breach under this theory. *See Anderson*, 477 U.S. at 248-49 (requiring sufficient evidence of a factual dispute rather than mere contentions to preclude summary judgment); *Brodhurst v. Frazier*, 57 V.I. 365, 369 (V.I. 2012) (evidence must amount to more than a scintilla).

Accordingly, we affirm the Superior Court's grant of summary judgment on the breach of contract claim.

## C. Wrongful Termination

In his complaint, Chapman also raised a wrongful discharge claim pursuant to the Virgin Islands Wrongful Discharge Act, codified at title 24, chapter 3, sections 76 through 79 of the Virgin Islands Code. (J.A. 76.) The provision provides, in pertinent part, that "[a]ny employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged . . . ." 24 V.I.C. § 76(c).

We agree with VIWMA and Cornwall that the Superior Court correctly granted summary judgment on this claim. The terms used in section 76 are defined in section 62 of the chapter. Under that section, "employer" is defined as:

> any person acting in the interest of an employer directly or indirectly that has employed five (5) or more employees for each working day in each of the twenty (20) or more calendar weeks in the two (2) year period preceding a discharge, but not a "public employer" as defined in chapter 14 of this title.

24 V.I.C. § 62. Chapter 14 concerns public employee labor relations and defines a "public employer" as:

442

the executive branch of the Government of the United States Virgin Islands and any agency or instrumentality thereof including, but not limited to, the Virgin Islands Port Authority, the Virgin Islands Water and Power Authority, the Virgin Islands Housing Authority, the University of the Virgin Islands, the Government Development Bank and the Virgin Islands Public Television System.

24 V.I.C. § 362.

 Pursuant to title 29, chapter 8, section 496(a) of the Virgin Islands Code, the section creating VIWMA, "[t]he Authority shall constitute an autonomous instrumentality of the Government of the Virgin Islands." 29 V.I.C. § 496. Thus, as VIWMA is a public employer under section 362, it is expressly exempt from application of the Virgin Islands Wrongful Discharge Act. *See Frorup-Alie v. V.I. Hous. Fin. Auth.*, Civ. No. 2000-0086, 2003 U.S. Dist. LEXIS 25395, at *18 (D.V.I. Oct. 24, 2003) (declaring that public employers are exempt from 24 V.I.C. § 76); *cf. Smith v. V.I. Water & Power Auth.*, Civ. No. 04-148, 2008 U.S. Dist. LEXIS 95852, at *26 (D.V.I. Nov. 24, 2008) (holding that no common law action for wrongful discharge based on public policy existed where plaintiff was unable to state a claim under the Wrongful Discharge Act because her employer was a "public employer").

 Moreover, even if we were to assume — without deciding — that a public employee may pursue a wrongful discharge claim against a supervisor in her individual capacity, we agree with the Superior Court that Cornwall is also entitled to qualified immunity from tort liability. Under section 497(d), "[t]he Board and its individual members, and the officers, agents or employees of the Authority, shall not incur civil liability for any action taken in good faith in the performance of their duties and responsibilities pursuant to the provisions of this chapter." 29 V.I.C. § 497(d). Moreover, the "directors, officers, and employees [of VIWMA] shall be immune from tort liability for acts and omissions constituting the exercise of their official functions . . . ." 29 V.I.C. § 496(d). Chapman did not produce adequate evidence to counter these provisions or establish bad faith, as he rested his rationale that Cornwall is not entitled to qualified immunity on conclusory statements rather than specific facts or evidence, which as noted in *Celotex Corp.*, is insufficient to combat a summary judgment motion. Thus, this Court affirms the Superior Court's grant of summary judgment in favor of the appellees on the wrongful discharge claim.

## D. Defamation

Finally, Chapman requests that this Court reinstate his defamation cause of action, in which he alleged that "[a] genuine issue of material fact exists as to whether [the appellees] . . . intentionally or negligently [communicated false information] to others who were not privileged." (Appellant's Br. 17.) This claim was dismissed by the Superior Court because Chapman "failed to specify who communicated false information about him" and "relied on speculation as to the responsible party." (J.A. 9.)

We agree with the Superior Court that Chapman failed to meet his burden to survive summary judgment on his defamation claim. In the Virgin Islands, a plaintiff's claim of defamation must consist of·the following elements:

> (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Kendall v. Daily News Publ'g Co.*, 55 V.I. 781, 787 (V.I. 2011) (quoting RESTATEMENT (SECOND) OF TORTS § 558) (internal quotation marks omitted), *aff'd*, 716 F.3d 82 (3d Cir. 2013). Although Chapman asserts that Cornwall and VIWMA "damaged [his] reputation by disseminating the allegation that [he] was not qualified for the position [he] held, [and] that [he] lied on [his] application stating that [he] held a master's degree and could not prove it" (J.A. 60), the record contains scant evidence that Cornwall or VIWMA were the source of these allegations. Chapman claims that he "once heard Racon and [Dwayne Fergus, a] former Contractor . . . with the Authority, on a radio station blasting [him] on this matter," that he "heard people in the stand of Schjang Ball Park shout: 'They fired you because you lied to them saying you have all kind of qualifications that you don't have' "; that he "received a phone call from a member of the Leeward Islands Cricket Association Board informing [him] of what they heard from a member of the Virgin Islands Cricket Association, that [he] falsified records and got fired"; and that "[w]herever [he] sought employment, [he] was informed that [he] could not be employed because [he] was terminated for falsifying employment records." (J.A. 60-61.) Nonetheless, Chapman's only attempt to con-

nect VIWMA and Cornwall to these statements is his terse assertion that he investigated the source of the comments and discovered "a couple of people" from VIWMA were responsible. (J.A. 61.) As Chapman conceded during oral argument, he does not know who gave out the information and further agrees that his defamation claim was insufficiently pled. *See Amadou v. Hawkins & Parnell, LLP*, 445 Fed. Appx. 157, 158 (11th Cir. 2011) (affirming dismissal of defamation claim where plaintiff failed to "specify what statements [were] made that he believed defamed him"); *Reilly v. NatWest Mkts. Grp.*, 181 F.3d 253, 271 (2d Cir. 1999) (affirming dismissal of defamation claim because plaintiff's failure to specify which statements where defamatory did not give "sufficient notice of the communications complained of"); *see also Int'l Islamic Cmty. Of Masjid Baytulkhaliq v. United States*, 981 F. Supp. 352, 370-71, 37 V.I. 287, 315-16 (D.V.I. 1997) (granting summary judgment where defamation allegations did not "meet the requirements of a well-plead[ed] allegation" as plaintiffs did not "identif[y] which statements they contend[ed] [were] libelous or defamatory"). Consequently, we affirm summary judgment on the defamation claim.

## III. CONCLUSION

For the reasons discussed, Chapman failed to demonstrate a genuine dispute of material fact that would have allowed this case to proceed to trial. We therefore affirm the Superior Court's grant of summary judgment in favor of the appellees on all counts.