NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-1514, 16-1675 & 16-2751
_____

RAFAEL OSCAR MARTINEZ DEL VALLE

v.

OFFICEMAX NORTH AMERICA; OFFICEMAX NORTH AMERICA, INC.,

(D.C. No. 13-cv-00024)

RAUL SERRANO; IDONNA RICHARDSON; CHELSEA BARON;
ZEBBIESHA CALLWOOD; YVONNE CARTY;
KURTNEY CHRISTOPHER TODMAN; MARLITA HICKSON-SMITH;
JOANNE JAMES

v.

OFFICEMAX NORTH AMERICA, INC.

(D.C. No. 13-cv-00034)

Rafael Oscar Martinez Del Valle, Raul Serrano, Yvonne Carty,

Appellants in 16-1514

OfficeMax North America, Inc.,

Appellant in 16-1675 & 16-2751

_____

On Appeal from the District Court of the
Virgin Islands
(D.C. Nos. 13-cv-00024 and 13-cv-00034)
District Judge:  Hon. Susan D. Wigenton
_____

Argued
December 15, 2016

Before: CHAGARES, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: February 10, 2017)
_____

Terri L. Griffiths
P.O. Box 8647
St. Thomas, VI   00801

Lee J. Rohn
Rhea R. Lawrence   [ARGUED]
Lee J. Rohn  & Associates
1101 King Street
Christiansted, VI   00820
        *Counsel for Appellant/Cross-Appellees*

Bailey A. Calhoun
Simone R.D. Francis   [ARGUED]
Micol L. Morgan
Ogletree Deakins Nash Smoak & Stewart
1336 Beltjen Rd.
Suite 201
St. Thomas, VI   00802

        *Counsel for Appellee/Cross-Appellant*
_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

Three former employees of OfficeMax North America, Inc. ("OfficeMax"),[1]

appeal an order of the District Court of the Virgin Islands granting summary judgment

_____

     [*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

against them on their claims related to their firing. OfficeMax cross-appeals the District Court's denial of its motions for fees and costs. For the reasons set forth below, we will affirm the grant of summary judgment and dismiss the cross-appeal.

## I.    BACKGROUND[2]

### A.    Facts

Rafael Oscar Martinez Del Valle, Raul Serrano, and Yvonne Carty (collectively the "Plaintiffs") were employed by the OfficeMax store on St. Thomas. Martinez was the Store Manager. He was hired in 2010, and his employment status was terminated on September 12, 2012. Serrano was hired in 2009 as a furniture specialist. He was later promoted to Merchandise Assistant Manager, a position he held until his termination on September 12, 2012. Carty joined the staff in 2008 as a sales associate and was later Merchandise Assistant Manager. She held that position when she was terminated on December 13, 2012.

Martinez and Serrano were fired after an internal OfficeMax investigation into the use of a so-called "intrusion coupon" at the St. Thomas store. That coupon – which provides users a $10 discount on a purchase of $30 or more after taxes – was "intended for handbill distribution around approved OfficeMax locations where there was a new

---

[1] OfficeMax North America, Inc., is a wholly owned subsidiary of OfficeMax Incorporated, which is a wholly owned subsidiary of Office Depot, Inc. Martinez also sued an entity called "OfficeMax North America." All parties have treated this entity as one and the same as OfficeMax North America, Inc.

[2] Because this case reaches us on appeal from an order of summary judgment against the Plaintiffs, we consider all disputed facts in their favor and recount the background facts in accordance with their version of events. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995). We note disputed facts for clarity.

3

direct competitor[.]" (Responding Br. at 8.) The Plaintiffs describe the coupon as "an anti-competitive, aggressive coupon" that is used "to undercut new competition." (Opening Br. at 3.)

There is a dispute about how the coupon ended up at the St. Thomas store. The Plaintiffs say that the District Manager responsible for the St. Thomas store, Rafael Flores, emailed the coupon to a number of store managers, without corporate approval. He then "lied about his error and framed Martinez" using the internal corporate investigation as a vehicle, an investigation that the Plaintiffs characterize as a "sham." (Opening Br. at 3.) According to the Plaintiffs, the controversy that developed around the coupon became an excuse which OfficeMax "used to get rid of employees who had been discussing unionizing the [St. Thomas] store and complaining about payment of overtime." (Opening Br. at 3.)

Regardless of how the coupon came to be at the St. Thomas store, it is not disputed that, because no new competitor was there, the coupon could not properly be used. The internal investigation found that several employees nevertheless used the coupon at the store, including Martinez and Serrano. The investigation also found that both of those men had used the coupon in combination with other discounts and promotions. The OfficeMax employee manual states that employee discounts "cannot be combined with any other offer or discount (e.g., clearance items, advertised items, rebate items, coupons, or Friends & Family offers)." (JA 1097.) OfficeMax fired six employees, including Martinez and Serrano, as a result of the investigation.

4

The Plaintiffs dispute that the use of the coupon violated company policy. They say that, during the transactions involving the coupon, the "employee was a customer … not acting as an employee" and that "each transaction was: (1) approved by a cashier; (2) approved by the pre-programmed computer cashing system; (3) consistent with store policy; and [4] approved by a manager or assistant manager." (Opening Br. at 4.) The Plaintiffs also provide additional details regarding Martinez's activities that they believe led to retaliation in the form of the investigation, specifically that he "repeatedly warned that OfficeMax was not calculating employee overtime correctly based on territorial law" and that the employees were "contemplating unionization." (Opening Br. at 5.)

Carty and two other employees were fired after a subsequent investigation in November 2012 related to store returns without proper documentation. There is no disagreement about a basic fact related to Carty's firing: in thirteen instances in which customers made returns without a receipt, Carty entered the code "999" into the store computer. (Opening Br. at 32.) That then populated the name "Cecilia Bartley" into the customer identification field, in lieu of the customers' actual names. (Opening Br. at 32; Responding Br. at 12.) Carty argues that entering the 999 code was "exactly what she had been instructed to do" as a way to manage long lines. (Opening Br. at 32.) OfficeMax contends that processing returns under a fictitious name was a violation of company policy and is the reason Carty was fired.

B.     **Procedural History**

Martinez brought suit against OfficeMax on March 15, 2013. His later-filed Amended Complaint contained four claims: breach of written contract; breach of implied

5

covenant of good faith and fair dealing; defamation; and intentional infliction of emotional distress. In its answer to Martinez's Amended Complaint, OfficeMax asserted counterclaims for breach of duty of care, breach of duty of loyalty, and restitution. He moved to file a Second Amended Complaint, after the close of fact discovery, to add claims for negligent misrepresentation, intentional misrepresentation, and breach of privacy, as well as to add new factual allegations. The Magistrate Judge recommended that the motion be granted with respect to the factual allegations and denied with respect to the three new claims because adding them would have been futile. While that Report and Recommendation was pending, Martinez filed another motion to amend his complaint. The District Court eventually adopted the Magistrate Judge's Report and Recommendation and ordered that Martinez's motion to amend be granted in part (with respect to the factual allegations)[3] and otherwise denied (with respect to the additional claims). The Court denied the successive motion to amend, as it was filed while the Report and Recommendation was pending.

Serrano, Carty, and other terminated employees filed a complaint on April 2, 2013. They ultimately filed a Second Amended Complaint alleging six counts: wrongful termination in violation of the Virgin Islands Wrongful Discharge Act ("WDA"); breach of contract; defamation; violation of the Virgin Island Fair Labor Standards Act

---

[3] "In particular, plaintiff [sought] to include allegations pertaining to (1) how the St. Thomas store received the intrusion coupons; (2) the employees' use of the intrusion coupons; (3) OfficeMax's policy change regarding associate discounts; and (4) Alberto Rovira's (OfficeMax's loss prevention director) loss prevention investigation." (Magistrate Judge's Report and Recommendation, 13-cv-24, D.I. 464 at p. 2 n. 3.)

("VIFLSA"); intentional infliction of emotional distress; and negligent misrepresentation. Each plaintiff raised all counts, except Carty did not bring a WDA claim.

The District Court consolidated the two cases for discovery. OfficeMax later filed motions for summary judgment in both. The Court denied the motions in part, and granted them in part. The Court denied OfficeMax's motion for summary judgment on the WDA claims, except for the WDA claim brought by Serrano. The Court granted summary judgment on that one WDA claim, and on all the other claims brought by the Plaintiffs.

Martinez, Serrano, and Carty had immediately appealed the Court's summary judgment opinion, but we dismissed those appeals for lack of jurisdiction. Martinez then filed a Motion to Sever and for Rule 54(b) Certification in the District Court. The Court issued an opinion certifying the case under Rule 54(b) on February 22, 2016, reasoning that the summary judgment opinion was final as to the claims brought by Martinez, Serrano, and Carty. The District Court denied Martinez's motion to sever the counter-claims. Martinez, Carty, and Serrano then appealed various counts, as detailed herein.

After the issuance of the summary judgment opinion, OfficeMax filed a petition for attorneys' fees. The Court denied that petition without prejudice on March 11, 2015. OfficeMax cross-appealed that denial. The District Court also issued an order denying OfficeMax's motion for costs. OfficeMax cross-appealed that order as well.

7

**II.   DIRECT APPEAL**[4]

All three plaintiffs appeal the standard the District Court used to adjudicate their summary judgment motion, so we begin with that. Martinez appeals the District Court's ruling on four of his claims: breach of contract, negligent misrepresentation, defamation, and breach of the duty of good faith and fair dealing. Although the headings in Plaintiffs' brief suggest that Carty also appeals each of those counts, the substance of her brief demonstrates that she is only appealing the claim for breach of the duty of good faith and fair dealing. We therefore address the three claims unique to Martinez before considering that joint claim. Serrano appeals the District Court's ruling on his WDA and VIFLSA claims, which we turn to last.

### A.   Summary Judgment Standard

A moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a summary judgment motion, a court must view the facts in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Plaintiffs argue that the District Court erred by relying on OfficeMax's version of the facts when, in facing a summary judgment motion, they were

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1332 and 48 U.S.C. § 1612. We have jurisdiction over the Plaintiffs' appeals pursuant to 28 U.S.C. § 1291. *See Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012) ("Under Rule 54(b), however, a district court may convert an order adjudicating less than an entire action to the end that it becomes a 'final' decision over which a court of appeals may exercise jurisdiction under 28 U.S.C. § 1291."). For the reasons described herein, we lack jurisdiction over OfficeMax's cross-appeal.

8

entitled to have the facts viewed in their favor. They are right; the District Court's recitation of the facts is based almost entirely on OfficeMax's version of the facts. In the end, however, that error is harmless because, even when the record is viewed as required, the Plaintiffs cannot prevail.

### B. Martinez's Claims

#### 1. *Breach of Contract*

The District Court granted summary judgment to OfficeMax on Martinez's breach of contract claim because there was no contract altering the at-will status of the employees, including Martinez. The Court held that the employee manual could not serve as a contract because it contained a disclaimer that expressly denied it "create[d] any contractual rights of any kind." (JA 7 (quoting Employee Manual at JA 1088).) Martinez had relied on the employee manual as the foundation of his contract claim, but, in his opening brief on appeal, he seems to have abandoned that argument. To the extent he makes any breach of contract claim, it is for breach of a unilateral contract, based on a promise that Alberto Rovira, an employee of OfficeMax, allegedly made when he interviewed Martinez about the intrusion coupon.

Whether that argument can even be considered, though, depends on whether it was raised in the District Court. OfficeMax says it was not. Martinez counters that he raised it in his Second Amended Complaint. Even if the assertion of a unilateral contract can be teased out of the Second Amended Complaint, the claim was not addressed by the

9

District Court because it was not briefed or argued there. [5]  That argument is therefore

waived.  *See United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013) (holding that to

"preserve a[n] … argument, a party must make the same argument in the District Court

that he makes on appeal").

Even if we could consider the argument, though, we would affirm the grant of

summary judgment for OfficeMax because Martinez relied for support only on his own

(tardy) affidavit, a document that he filed after OfficeMax had filed and briefed its

motion for summary judgment. [6]  Remarkably, Martinez never mentioned the alleged

promise in his two lengthy depositions. [7]  *Cf. Jiminez v. All Am. Rathskeller, Inc.*, 503

F.3d 247, 253 (3d Cir. 2007) ("[I]f it is clear that an affidavit is offered solely for the

purpose of defeating summary judgment, it is proper … to conclude that no reasonable

---

[5] Some allegations about Rovira's promise do appear in the Second Amended Complaint and the Court granted leave to amend with respect to those factual allegations. But the section of Martinez's Second Amended Complaint describing his "breach of contract claim" makes no mention of any theory of a unilateral contract.

[6] Martinez emphasizes that this allegation was in the operative complaint, noting that the District Court allowed amendment to permit the factual allegations pleaded in the Second Amended Complaint. But the fact that the allegations were in the Complaint does not change the fact that the only support for the allegations was in an affidavit filed after OfficeMax had filed for summary judgment.

[7] In addition to the affidavit, Martinez cites portions of his deposition testimony. But none of the portions he cites demonstrate that Rovira promised him that he would not be fired. Instead, they demonstrate that Rovira told Martinez that Flores, the District Manager, was the target of the investigation and that in the evening after his interview with Martinez, Rovira recommended that Martinez be terminated.
Martinez also argues that "Flores made the determination to fire Martinez before Rovira even interviewed Martinez[,]" citing an excerpt of Rovira's deposition. (Opening Br. at 19 (citing JA 1690).) But in this excerpt, Rovira stated that he was unaware that Flores had formed an opinion about terminating Martinez prior to the interview.

10

jury could accord that affidavit evidentiary weight and that summary judgment is appropriate.").

###### 2.   *Negligent Misrepresentation*

In his opening brief, Martinez attempts to tether a claim for negligent misrepresentation to his claim for breach of the duty of good faith and fair dealing, arguing that the same evidence applies to each claim.  OfficeMax points out that Martinez does not have a negligent misrepresentation claim because it was not included in his First Amended Complaint nor was it allowed to be added to the Second Amended Complaint.  Martinez argues in his reply brief that it was reversible error for the District Court to adopt the Magistrate Judge's Report and Recommendation denying leave to amend his complaint.

That argument fails because it was made for the first time in Martinez's reply brief.  *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." (citation omitted)).  This rule is necessary to "put the opposing party on adequate notice of the issue" and "develop it sufficiently to aid our review."  *NLRB v. FedEx Freight, Inc.*, 832 F.3d 432, 447 (3d Cir. 2016) (Jordan, J., concurring).  The argument regarding leave to amend is thus waived and not before us.

###### 3.   *Defamation*

We will also affirm the District Court's grant of summary judgment to OfficeMax on Martinez's defamation claim.  Martinez focuses this aspect of his appeal on the statements OfficeMax made to the Virgin Islands Department of Labor regarding the

11

reasons for his termination. The District Court found that those statements were conditionally privileged because they were made to a government agency, or in the alternative, that they were not actionable because they were true. Martinez admits that "OfficeMax is conditionally privileged to report actual misconduct to the [territory's Department of Labor,]" but he argues that "it is not conditionally privileged to report false 'facts' about misconduct that [OfficeMax] … actually knows to be false." (Opening Br. at 42.)

Again, Martinez misses the mark. He focuses on how the coupon got into the store (saying it was Flores' mistake, not his own) and the purpose of the coupon (characterizing it as a sinister anti-competitive scheme). But his claim avoids a key fact: regardless of how or why the coupon entered the store, Martinez used it improperly with his employee discount and allowed employees he was supposed to be supervising to do the same. He was fired for that violation of employee rules. When OfficeMax received a request from the Virgin Islands Department of Labor for information about Martinez to assess his application for unemployment, OfficeMax reported information responsive to the request. Its statements were therefore conditionally privileged. *See Van Hove v. Rock Resorts, Inc.*, 20 V.I. 161, 164 (D.V.I. 1983) (holding that conditional privilege protects statements made by an employer to a government agency) (citing *Bingle v. Neill*, 17 V.I. 349, 352 (D.V.I. 1980)). They were also true.

### C.     Martinez and Carty's Claim

The portions of the Plaintiffs' opening brief dealing with the joint claim of Martinez and Carty for a breach of the implied covenant of good faith and fair dealing

12

focus on the argument that the covenant arose from an implied contract between them and OfficeMax. It is, in other words, an argument that there was an implication within an implication. One of those implications is well established in law: the Virgin Islands, adopting the Restatement (Second) of Contracts, recognizes that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *See Chapman v. Cornwall*, 58 V.I. 431, 441 (V.I. 2013) (quoting Restatement (Second) of Contracts § 205).[8] The fight is over whether there was an implied contract between the parties.

More specifically, the parties dispute whether or not a contract existed here at all, i.e., whether an at-will employment relationship creates an implied contractual relationship containing the implied duty of good faith.[9] Assuming *arguendo* that

---

[8] Traditionally, the Restatements of the law as approved by the American Law Institute provided the rules of decision in the courts of the Virgin Islands, absent local law to the contrary. 1 V.I.C. § 4. After the establishment of the Supreme Court of the Virgin Islands, however, the Virgin Islands code was changed to permit courts to "determine the common law without automatically and mechanistically following the Restatements." 4 V.I.C. § 21, annotation 1 (2004); *see also Gov't of Virgin Islands v. Connor*, No. S.CT.CIV. 2013-0095, 2014 WL 702639, at *3 (V.I. Feb. 24, 2014) ("[S]ince the creation of this Court, the Restatements no longer hold an automatic preferred status in Virgin Islands law, but as in all other jurisdictions, merely represent persuasive authority."). Nevertheless, in *Chapman v. Cornwall*, 58 V.I. 431 (V.I. 2013), the Supreme Court of the Virgin Islands recognized that principle, *id.* at 441 n.14, and adopted § 205 of the Restatement (Second) of Contracts. *Id.* at 441.

[9] There is sound reason to believe that the duty does exist in the at-will employment context, though the duty cannot be read too broadly. Doing so would swallow the rule (and purpose) of at-will employment. *See Bethea v. Merchants Commercial Bank*, No. CV 11-51, 2014 WL 4413045, at *15 (D.V.I. Sept. 8, 2014) ("Nonetheless, courts have recognized that a tension exists between [the implied covenant of good faith and fair dealing and at will employment] doctrines insofar as the implied covenant imposes a duty of good faith and fair dealing on an employer who

Martinez and Carty did have an implied contract with OfficeMax, their claim for breach of the covenant of good faith and fair dealing nevertheless fails because they have not demonstrated that there is a genuine dispute of material fact with regard to one element of that claim under Virgin Islands law, namely that OfficeMax engaged in fraud or deceit.

According to the Virgin Islands Supreme Court, "[t]he duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations. A successful claim ... requires proof of acts amounting to fraud or deceit on the part of the employer." *Id.* (alteration in original) (citation omitted). That court has not articulated what is required to demonstrate fraud or deceit, and neither does the Restatement.[10] But other courts of the Virgin Islands have found that the elements of the tort of fraud – including a knowing misrepresentation and detrimental reliance – must be present. *See, e.g., Stapleton v. WenVI, Inc.*, 2012-cv-035, 2014 WL 3765855, at *3 (D.V.I. July 30, 2014) (adopting the common law definition of fraud for a duty of good faith and fair dealing claim "which establishes that a person 'defrauds' another if he makes a representation of an existing material fact, knowing it to be false, ... intending

intended to retain total discretion over his or her employment relationships….
Accordingly, the covenant of good faith and fair dealing should not be viewed too broadly, for the risk is that it may be misapplied." (first alteration in original) (citations and quotation marks omitted).

[10] The Restatement provides only that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205. The Comments to that section define good faith "as honesty in fact in the conduct or transaction concerned" while recognizing that the term "is used in a variety of contexts, and its meaning varies somewhat with the context." *Id.* The Comments do not mention or define fraud.

14

one to rely and under circumstances in which such person does rely to his damage")

(alteration in original) (citation omitted); *Remak v. Virgin Islands Water & Power Auth.*,

ST-15-CV-661, at *9 (Superior Ct. V.I. Nov. 16, 2016) ("Virgin Islands courts have

determined that in order to state a breach of the covenant of good faith and fair dealing

based on fraud, a complainant must demonstrate (1) a knowing misrepresentation, (2)

intent by the defendant that the plaintiff would rely on the false statement, (3) actual

reliance, and (4) detriment as a result of reliance.") (internal quotation omitted).

Martinez of course contests the reliability of those decisions, but we decline to

pass on their persuasive effect, because we conclude that, even if a lower bar for proof of

fraud were appropriate,[11] the Plaintiffs cannot state a claim. Martinez argues that

OfficeMax acted with fraud or deceit with respect to him in three ways. First, he says

that OfficeMax acted fraudulently when it retaliated against him for reporting overtime

violations.[12] He grounds that argument in an anti-retaliation provision in the employee

handbook. The handbook, however, also contains an express provision stating that it is

not to be viewed as a contract and does not "creat[e] any contractual rights of any kind."

(JA 1088.) That is sufficient to cut off any reasonable claim that the handbook created a

contract. *See Chapman*, 58 V.I. at 439 (recognizing that an employee manual will only

---

[11] At oral argument, counsel for Plaintiff argued that to demonstrate fraud for this type of claim, plaintiffs must only prove "a dishonest act." http://www2.ca3.uscourts.gov/oralargument/audio/16-1514DelVallev.OfficeMax.mp3, at 4:29 (argued December 15, 2016).

[12] Martinez might be attempting to bring an extra-contractual claim, loosely based on federal civil rights law, but he cannot use the implied duty of good faith and fair dealing as a catch-all for claims he did not actually plead.

be considered a binding contract where there is evidence that the parties "intended to be contractually bound by the provisions in the manual or evidence that a reasonable person would have believed such intent existed"). Furthermore, Martinez signed an acknowledgment that he had received and read the handbook in 2010. He cannot now be heard to assert an implied contractual claim based on it.

Second, Martinez argues that OfficeMax engaged in fraud or deceit when it terminated him on the basis of a "sham investigation." (Opening Br. at 3.) His theory is that the investigation was designed to place blame on him rather than on District Manager Flores, who Martinez alleges mistakenly distributed the coupon to the St. Thomas store. Martinez makes several unsupported but inflammatory allegations in support of this theory but ignores one critical and undisputed fact: it was a clear violation of company policy to use the intrusion coupon with his employee discount. OfficeMax terminated him for that act, and because as a manager he failed to prevent other employees from doing the same. In short, OfficeMax terminated him because he violated company policy. He was not an innocent party who was framed for another's misconduct. There is no fraud or deceit in firing an employee for an admitted violation of company policy. *See, e.g., Bethea v. Merchants Commercial Bank*, No. CV 11-51, 2014 WL 4413045, at *16 (D.V.I. Sept. 8, 2014) ("Plaintiff's allegation that [his employer's] reasons for termination were pretextual is not sufficient to establish fraud and deceit.").

Third, Martinez claims that the duty of good faith and fair dealing was breached when Rovira, an OfficeMax employee investigating the use of the intrusion coupon, falsely promised him that he would not be fired based on information provided during the

16

investigation.  But, as we discussed above, the only support for that claim is an affidavit that Martinez submitted after OfficeMax filed and briefed its motion for summary judgment.  Such gamesmanship – coming up with a self-serving affidavit after the close of discovery and after one's opponent has briefed a dispositive motion – cannot typically overcome a gap in the record that gave rise to the motion, *see Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 705-06 (3d Cir. 1988) (rejecting an affidavit filed only after plaintiff "faced almost certain defeat in summary judgment" where it contradicted earlier deposition testimony), and it does not succeed here.

As to Carty, her claims center on her termination after the no-return receipt investigation.  Like Martinez's claims, they fail because there is no evidence that OfficeMax committed fraud or deceit.  Carty argues that she was "expressly directed by the OfficeMax corporate help desk to use management discretion to override the register when necessary to keep the lines moving."  (Opening Br. at 29.)  It is true that, during her deposition, Carty testified that she had learned the "999" code from the OfficeMax "Help Desk."  (JA 2374.)  She said that she learned it on an occasion when "transactions …  were not going through[,]" and she used it as "a survival mechanism" when the store was busy, hot, and overwhelming.  (JA 2374.)  But Carty did not testify that OfficeMax supervisors or management approved her use of the code generally for busy times, or on the thirteen occasions revealed in the investigation.  And she expressly recognized that failing to input a customer's name and address when processing a return was against company policy.

Like Martinez, Carty was fired because she violated company policy. There is no evidence that OfficeMax engaged in fraud or deceit in enforcing its stated policy. We therefore will affirm the District Court's grant of summary judgment to OfficeMax on Martinez and Carty's claim for breach of the covenant of good faith and fair dealing.

**D.     Serrano's Claims**

Serrano only appeals the District Court's rulings on his WDA and VIFLSA claims. We review each in turn.

1.     *Wrongful Discharge Act*

The WDA "amounts to a 'statutory abrogation of the common law rule of at-will employment applicable in the Virgin Islands.'" *Maynard v. Rivera*, 675 F.3d 225, 228 (3d Cir. 2012) (quoting *Kretzer v. Hess Oil V.I. Corp.*, 218 F. Supp. 2d 724, 728 (D.V.I. 2002)). It provides "that an employer can lawfully fire an employee for one of nine enumerated reasons[,]" unless modified by a union contract. *Id.* (citing 24 V.I.C. § 76(a)). If an employee is discharged for a reason other than one of the nine, he or she is entitled to a presumption that he or she was discharged wrongfully. *Id.* at 228-29 (citation omitted). "[T]he WDA 'cover[s] all or almost all legitimate reasons for discharge.'" *Id.* at 229 (second alteration in original) (quoting *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of U.S. Virgin Islands*, 218 F.3d 232, 244 (3d Cir. 2000)).

We have previously held that the WDA, as applied to supervisors, is preempted by the National Labor Relations Act ("NLRA"). *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of U.S. Virgin Islands ex rel. Virgin Islands Dep't of Labor*, 357 F.3d 297, 303 (3d Cir. 2004). In reaching that conclusion, we relied on the Supreme Court's

18

reasoning in *Beasley v. Food Fair of North Carolina*, 416 U.S. 653 (1974), which taught "that state (or territorial) laws that pressure employers to accord supervisors the status of employees for collective bargaining purposes conflict with Section 14(a) of the NLRA." *Id.* (citing *Beasley*, 416 U.S. at 662).

The District Court held that the WDA did not apply to Serrano because he was a "management level employee[]." (JA 16.) The Court rejected Serrano's argument that, as a Merchandise Assistant Manager, he did not qualify as an exempt supervisor.[13] On appeal, Serrano argues that OfficeMax failed to meet its burden to demonstrate that Serrano was a supervisor. We disagree.

Under the NLRA, a supervisor is defined as:

[A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C § 152(11). The statute requires that a supervisor has "authority to engage in any [one] of the … listed supervisory functions," not each of them. *NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 713 (2001).

There is extensive evidence that Serrano was a supervisor within the meaning of that definition. His job title was "Merchandise Assistant Manager." The District Court

---

[13] The District Court relied on the terms "manager" and "supervisor" as synonyms. Because the NLRA uses the term "supervisor" we use it exclusively.

19

pointed out that this was the same position held by Plaintiff Carty.[14] A written job description provided by OfficeMax states that the Merchandise Assistant Manager "manage[d] the day-to-day activities of the Specialists on the sales floor." (JA 516.) Other job responsibilities included "[c]onstruct[ing] development plans for assigned Specialists including … annual performance appraisals." *Id.* The Merchandise Assistant Manager was also required "to lead and direct the work of others in a supportive manner[.]" (JA 517.) According to Chris Richardson, current Vice President of the East Division for OfficeMax and Office Depot, Inc., and former Vice President of Store Operations, the Merchandise Assistant Manager "exercise[d] discretion and independent judgment in selecting the employees to whom tasks will be assigned, assigning tasks, prioritizing tasks, providing training and instruction to employees … evaluating whether employees have performed tasks correctly … and providing coaching and feedback to employees …." (Richardson Declaration, 13-cv-34, D.I. 550-2 at ¶ 15.) The Merchandise Assistant Manager also served as the Manager on Duty when the Store Manager or Assistant Store Manager were unavailable. The Manager on Duty was "responsible for making decisions about how to resolve customer and/or employee issues in the best interests of the company." (*Id.* at ¶ 17.)

Serrano's own testimony during his depositions confirmed that account of his responsibilities. He explained that in this role, he oversaw the Furniture and Technology sections of the store. Typically, five to six associates would work in the Technology section at a time, and anyone available would work in the Furniture section. When asked

---

[14] Carty does not dispute that she was a supervisor under the NLRA.

during his deposition if he was "the supervisor responsible for that work while [the associates] work[ed] th[ose] section[s][,]" Serrano answered affirmatively. (JA 2443.) Serrano also stated that when the more senior managers were not in the store, he served as the Manager on Duty. Serrano described one period, of approximately four months, where there was no assigned store manager for the St. Thomas location. Serrano and Carty each served as Manager on Duty during that period. Serrano affirmed that he and Carty were "kind of running the store" during that time, (JA 2596), and that, as "Manager on Duty," his job was to serve as "the manager that was doing the walks around the store and delegating." (JA 2597.) Serrano also stated in his depositions that he sometimes provided recommendations about candidates to hire, sometimes conducted job interviews, and had the authority to recommend disciplinary action for associates who did not perform their duties satisfactorily.

There thus is not a genuine dispute of material fact as to Serrano's status as a "supervisor" under the NLRA. It is plain that Serrano assigned and directed OfficeMax employees, and had a role in hiring and disciplining employees. His service as the sole Manager on Duty for significant periods of time and his responsibility to delegate to associates, prioritize tasks, and give feedback, all lead us to conclude that he exercised independent judgment. There is no evidence in the record that Serrano only directed employees pursuant to policy and "did not use independent judgment or discretion." (Reply Br. at 35.) We will therefore affirm the District Court's grant of summary judgment to OfficeMax on Serrano's WDA claim.

21

### 2. *Virgin Islands Fair Labor Standards Act*

Serrano also challenges the District Court's holding on his claim under the Virgin Islands Fair Labor Standards Act ("VIFLSA.") That statute mirrors the federal Fair Labor Standards Act ("FLSA") and is interpreted in accordance with it. *See Woods v. S. Am. Trade*, 22 V.I. 35, 38 (Terr. V.I. 1986) (recognizing that courts may "resort[] to the Federal Act and the regulations promulgated thereunder … for aid in the proper construction" of the VIFLSA).

We agree with the District Court that OfficeMax has demonstrated that Serrano was a bona fide executive and thus exempt from overtime under the VIFLSA. *See* 24 V.I.C. § § 2, 20 (exempting bona fide executives from overtime requirements). "It is well settled that exemptions from the FLSA are construed narrowly, against the employer." *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 250 (3d Cir. 2005) (citing *Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 183 (3d Cir. 2000)). The employer has the burden to demonstrate "plainly and unmistakably" that the employee qualifies for the exemption. *Id.* (citation omitted). Therefore, to qualify Serrano as a bona fide executive, OfficeMax had to show that: 1) Serrano was compensated on a salary basis of not less than $455 per week;[15] 2) Serrano's "primary duty" was "management of the enterprise in which the employee [was] employed"; 3) Serrano "customarily and regularly direct[ed] the work of two or more other employees"; and 4) Serrano had "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing,

---

[15] Although the salary requirement changed on December 1, 2016, we apply the requirement in effect at the time Serrano was employed.

advancement, promotion or any other change of status of other employees [were] given particular weight." 29 C.F.R. § 541.100(a).[16]

Serrano does not appear to dispute the salary prong, and OfficeMax has offered evidence that he was a salaried-employee and was paid $693.27 per week. OfficeMax has also met prongs two and three of the bona fide executive test, as demonstrated by our analysis above with respect to the NLRA. Lastly, we are persuaded that Serrano's "suggestions and recommendations as to the hiring [and] firing … of other employees [were] given particular weight." 29 C.F.R. § 541.100(a)(4). Serrano admitted during his deposition that, on at least two occasions, he interviewed candidates when there was not a Store Manager or Assistant Manager. He acknowledged that a superior "went by what I put down on a paper" after he conducted one interview. (JA 2439.) He also affirmed that he "had at least some responsibility… in holding associates accountable" for policy violations and could "recommend corrective action if it was appropriate[.]" (JA 2453.) OfficeMax thus satisfied its burden to demonstrate that Serrano was a bona fide executive, and Serrano has not provided evidence that fairly calls that conclusion into question. We will therefore affirm.

## III.    CROSS APPEALS

OfficeMax cross-appeals the District Court's denial of attorneys' fees and deposition costs. The Plaintiffs argue that we lack jurisdiction. OfficeMax only tries to

---

[16] Both parties, citing *Woods v. South American Trade*, agree that, because Virgin Islands law does not define a "bona fide executive," we refer to the Code of Federal Regulations. *Cf. Sorber v. Glacial Energy VI, LLC*, No. CIVIL ST-10-CV-588, 2013 WL 6184064, at *3 (V.I. Super. Ct. Nov. 22, 2013) (applying the CFR definition to define bona fide executive where the Virgin Islands statute (the WDA) was silent).

refute that argument as to the order denying costs; it never replies that we have jurisdiction over the order denying attorneys' fees without prejudice. In fact, at the conclusion of its reply brief, it only asks us to "REVERSE the District Court's refusal to award deposition transcript costs." (Appellee Reply Br. at 17.) That is likely because it is clear we lack jurisdiction to hear OfficeMax's appeal from the Court's order denying without prejudice the motion for fees. We likewise lack jurisdiction over OfficeMax's appeal from the Court's order denying depositions costs.

## A.    Attorneys' Fees

Because the Court's order denying attorneys' fees did so without prejudice it left OfficeMax the opportunity to renew its request at a later time. The Plaintiffs rightly contend that the order is therefore not final and we lack jurisdiction to review it.

"[A] dismissal order that contemplates that there may be a future action based on the same controversy does not constitute a final order for purposes of appeal." *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 480 (3d Cir. 2006) (relying on *LNC Invs. LLC v. Republic Nicaragua*, 396 F.3d 342, 347 (3d Cir. 2005)). Similarly, an order permitting a party to reinstate its motion at a later date is likewise not final for purposes of 28 U.S.C. § 1291. *Delgrosso v. Spang & Co.*, 903 F.2d 234, 236 (3d Cir. 1990) (holding that an order was not final when it "permit[ted] reinstatement and contemplate[d] the possibility of future proceedings"). Here, the Court's order clearly contemplated the possibility of future proceedings when it stated that it "will deny Defendant's fee application without prejudice in the event that Defendant successfully defends against Plaintiffs on appeal." (JA 40.) We are thus without jurisdiction.

24

**B.     Deposition Costs**

The costs order appears to be final, but, because the order granting voluntary dismissal of the counterclaims was without prejudice, there is no final order as to all claims and all parties. *See Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir. 1976) ("Generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action."). OfficeMax argues that the order denying deposition costs "ended the litigation of the costs issues on the merits and left nothing more for the court to do but execute on the costs order." (Reply Br. at 2.) But even if the order ended the dispute as to costs and the costs order could be executed, that order did not end the litigation as to all claims and all parties. Because OfficeMax chose to dismiss its counterclaims without prejudice, with the option to reinstate those claims after appeal, we lack jurisdiction to review the Court's order denying costs. Accordingly, we must dismiss OfficeMax's cross appeal.

**IV.    CONCLUSION**

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to OfficeMax on all of Plaintiffs' claims and will dismiss OfficeMax's cross-appeal.